This is not the official court record. Official records of court proceedings may only be obtained directly from the court maintaining a particular record.

## Deborah Leon, Brian Leon, MD v. Indiana University Health Care Associates, Inc. d/b/a IUHP

| | |
|---|---|
| Case Number | 49D07-2204-MI-013495 |
| Court | Marion Superior Court 7 |
| Type | MI - Miscellaneous Civil |
| Filed | 04/24/2022 |
| Status | 04/24/2022 , Pending  (active) |

## Parties to the Case

| | |
|---|---|
| Defendant | Indiana University Health Care Associates, Inc. d/b/a IUHP |
| Plaintiff | Leon, Deborah |
| Plaintiff | Leon M.D., Brian |

Attorney
George William Pendygraft
*#567949, Retained*

6770 Spirit Lake DR
STE 201
Indianapolis, IN 46220
317-590-3398(W)

## Chronological Case Summary

04/24/2022  **Case Opened as a New Filing**

04/25/2022  **Complaint/Equivalent Pleading Filed**
Complaint/Equivalent Pleading - ($ 0)

| | |
|---|---|
| Filed By: | Pendygraft, George William |
| Filed By: | Leon, Deborah |
| Filed By: | Leon, Brian MD |
| File Stamp: | 04/24/2022 |

04/25/2022  **Subpoena/Summons Filed**
Subpoena/Summons Filed - ($ 0)

| | |
|---|---|
| Filed By: | Pendygraft, George William |
| Filed By: | Leon, Deborah |
| Filed By: | Leon, Brian MD |
| File Stamp: | 04/24/2022 |

04/25/2022  **Appearance Filed**
Appearance - ($ 0)

| | |
|---|---|
| For Party: | Pendygraft, George William |
| For Party: | Leon, Deborah |
| For Party: | Leon, Brian MD |
| File Stamp: | 04/24/2022 |

This is not the official court record. Official records of court proceedings may only be obtained directly from the court maintaining a particular record.

STATE OF INDIANA            )        MARION COUNTY SUPERIOR/CIRCUIT
                           )        COURT
                           )
                           ) SS:
COUNTY OF MARION           )        CAUSE NO.:_____

BRIAN LEON, M.D., FACP AND         )
DEBORAH LEON, HUSBAND AND          )
WIFE,                              )
                                  )
                                  )
          PLAINTIFFS,             )
                                  )
                                  )
    v.                            )
                                  )
                                  )
                                  )
INDIANA UNIVERSITY                )
HEALTH CARE ASSOCIATES, INC.,     )
                                  )
                                  )
          DEFENDANT.              )

## COMPLAINT AND REQUEST FOR JURY TRIAL

Brian Leon, M.D., FACP ("Dr. Leon" ) and Deborah Leon ("Deborah"), husband and

wife (collectively, "Plaintiffs"), bring this lawsuit against Indiana University Health Care

Associates, Inc. ("IUHCA") d/b/a IU Health Physicians ("IUHP").

## PARTICULARS COMMON TO ALL COUNTS

### *Parties*

1.      Plaintiffs: (a) are Hamilton County residents, (b) have been married for more than

27 years, and (c) have two teenage children.

2.      Dr. Leon's date of birth is August 23, 1964.

1

3. Dr. Leon: (a) has held an active, unlimited license to practice medicine in Indiana since July 1, 1995, (b) completed his internal medicine residency at the IU School of Medicine ("IUSOM") in 1997, and (c) is board certified in internal medicine.

4. After his residency, Dr. Leon: (a) entered a relationship with IUHCA, and (b) concurrently accepted a faculty appointment to IUSOM where he taught medicine for more than twenty-three years attaining the position of Associate Professor of Clinical Medicine.

5. Until April 1, 2021, Dr. Leon practiced medicine at IUHP's University Primary Care Facility ( "UF") located at 550 North University Blvd., Suite 3005, Indianapolis, Indiana, 46202.

6. Defendant IUHCA: (a) was incorporated on September 23, 1987 as an Indiana not-for-profit corporation, (b) has its principal office in Marion County, (c) is a Section 501(c)(3) tax exempt entity, (d) has as members IU Health, Inc. ("IU Health") and Indiana University holding 51 (Class B) and 49 (Class A) membership units, respectively, and (f) is subject to the Court's jurisdiction.

7. IUHCA filed certificates for the assumed business names of "IU Medical Group-Specialty Group" on June 26, 1997, "The Indiana Clinic" on February 23, 2009 and "Indiana University Health Physicians," "IU Health Physicians" and "IUHP" on October 22, 2010, which individually and collectively are the same legal entity named as Defendant in this Complaint.

*Customs and Practices*

8. Prior to April 1, 2012, Dr. Leon's relationship with IUHCA was not reduced to writing.

9. However, prior to April 1, 2012, customs and practices were in place and followed during the nearly fifteen year relationship between IUHCA and Dr. Leon.

10.     Moreover, those customs and practices were still in place on and after April 1, 2012 because they were either implied or expressed in the agreement ("4/1/2012 Contract") that IUHCA and Dr. Leon made on April 1, 2012, a copy of which is attached as Exhibit A.

11.     For UF's physicians, those customs and practices included: (a) an affiliation with IUSOM, (b) a majority being board certified in internal medicine, (c) the treatment of adult patients only, (d) the diagnosis and treatment of significant numbers of patients with highly complex illnesses, and (e) except for removal for cause, a permanency for physicians with longevity like Dr. Leon in recognition of their professional economic sacrifices, medical teaching at IUSOM and treatment of very ill patients with special needs.

*4/1/2012 Contract*

12.     When the 4/1/2012 Contract was made, IUHCA not only had an extraordinary financial and administrative advantage but also had not fully and timely disclosed its relationships with IU Health and IUSOM.

13.     The 4/1/2012 Contract did not create a physician-patient relationship between IUHP and any of Dr. Leon's patients.

14.     IUHP Primary Care ("IUHP-PC") directed Dr. Leon and other primary care physician providers to refer patients needing other medical services to IUHCA and/or its affiliates even if those services were more expensive.

15.     IU Health's conflict of interest, whistleblower, document retention and destruction and joint venture policies ("IU Health Policies") supposedly were applicable to and had to be applied by IUHP.

3

16.     Prior to October 2, 2020, IUHP did not provide Dr. Leon: (a) the IU Health Policies, (b) the written IUHP policies supposedly applicable to him, and/or (c) information regarding how to access those policies or changes made to them.

17.     IUHP's Section 501(c)(3) tax exempt status was based on its stated mission ("IUHP's Mission Statement") of delivering preeminent medical care and service to patients.

18.     The nonrenewal of the 4/1/2012 Contract contravened IUHP's Mission Statement because it lessened the quality of medical care and service delivered to Dr. Leon's patients.

19.     IUHP suffered annual deficits of more than two-hundred million dollars for each of years 2016-18.

20.     Class B Member IU Health transferred more than seven-hundred million dollars during 2016-18 to cover IUHCA's deficits.

21.     IUHP's deficits and IU Health's funding of those deficits were contrary to IUHP's Mission Statement because they caused and/or contributed to the nonrenewal of the 4/1/2012 Contract resulting in Dr. Leon's patients being diagnosed and treated by physician providers substantially less experienced than Dr. Leon who were neither board certified in internal medicine nor familiar with the patients' histories.

22.     Dr. Leon did not prepare any part of or have any input on the 4/1/2012 Contract that was: (a) prepared by IUHCA's representatives, (b) presented to him as non-negotiable, (c) represented to be consistent with the prior relationship between IUHCA and him including the applicable customs and practices, and (d) required to be signed without meaningful opportunity for him or his attorney to review it.

23.     IUHP did not provide physician services to patients because only an individual like Dr. Leon can be licensed to provide such services.

4

24.     Regarding the services provided under the 4/1/2012 Contract, IUHP was the agent for Dr. Leon who was the principal.

25.     IUHP billed Dr. Leon's patients for his medical services, collected his patents' payments and retained them in exchange for payments made to and property and liberty rights granted him under the 4/1/2012 Contract.

*University Site Medical Directors*

26.     Beginning in April 2013 and lasting until August 1, 2018, Dr. Leon held the IUHP-PC leadership position of "University Site Medical Director."

27.     No written complaint was made against Dr. Leon during his service as University Site Medical Director.

28.     Early on, the custom and practice was for IUHP-PC leadership ("IUHP-PC Leadership") over Site Medical Directors like Dr. Leon to be comprised of IUHCA's Vice President of Primary Care and several primary care physicians the majority of whom were board certified in internal medicine.

29.     However, by 2018, without notification or explanation, the IUHP-PC Leadership was comprised of just Dr. Kevin B. Gebke ("Dr. Gebke") and IUHCA's Vice President of Primary Care, Celia Surface-Bruder ("VP Surface-Bruder"), neither of whom was a physician board certified in internal medicine.

*Practice and Service Line Leaders*

30.     "Practice Leaders" are defined in the 4/1/2012 Contract to be Dr. Leon's Service Line Leader and IUSOM's academic chief.

5

31.     The 4/1/2012 Contract did not specify who was Dr. Leon's Service Line Leader(s) although the Contract and custom and practice provided for Dr. Leon to report to IUHP-PC's Service Line Leader(s).

32.     Service Line Leaders were not *ex officio* officers of IUHCA and reported to and worked under IUHCA's officers.

33.     IUHP-PC's custom and practice was to have two or more primary care service line leaders with at least one being a physician board certified in internal medicine.

34.     IUHP never provided Dr. Leon written notice of the name(s) of or any change in his IUHP-PC service line leader(s).

35.     However, in a July 18, 2016 letter to Dr. Leon, Dr. Greg C. Kiray ("Dr. Kiray") and Dr. Gebke each identified himself as an IUHP-PC Service Line Leader.

36.     (a) Dr. Kiray left his IUHP-PC Service Line Leader position in 2018 and became the chief medical officer ("CMO") of IUHP-PC, (b) Dr. Gebke joined the IUHCA Board of Directors in 2018 and became the only remaining IUHP-PC Service Line Leader, and (c) Dr. Gebke became the interim CMO of IUHP-PC after Dr. Kiray moved to IU Health in 2020, resulting in no physician board certified in internal medicine serving as either IUHP-PC Service Line Leader or CMO.

37.     In 2018 and through April 1, 2021, VP Surface-Bruder was an IUHCA officer with authority over IUHP-PC's Service Line Leader and CMO.

*IUHP-PC Leadership*

38.     In 2018: (a) IUHP-PC had nineteen Site Medical Directors for its more than fifty local primary care facilities, sixteen of whom together with Dr. Leon were board certified in internal medicine and/or pediatric medicine and two of whom were board certified in family

medicine; and (b) excepting Dr. Leon and the two physicians board certified in family medicine, Dr. Gebke either demoted or eliminated all of them and reorganized IUHP-PC into five geographic regions with a primary care regional medical director ("RMD") designated for each.

39.     Each RMD served as the "Local Leader" of the IUHP-PC facility where he/she practiced although a RMD was not *ex officio* an officer of IUHCA.

40.     On July 31, 2018, VP Surface-Bruder and Dr. Gebke met with Dr. Leon and asked him to assume the responsibility of RMD ("SCRMD") for IUHP-PC's South Central Region.

41.     While SCRMD, Dr. Leon: (a) managed more than forty physicians and supporting staff at seven IUHP-PC facilities, (b) served as the UF Local Leader where previously he had been the University Site Medical Director, and (c) practiced internal medicine at UF.

42.     (a) Dr. Leon was the only physician board certified in internal medicine or pediatric internal medicine designated a RMD by Dr. Gebke, and (b) Dr. Gebke only agreed to Dr. Leon's appointment as SCRMD because he was encouraged or directed to do so by Dr. Kiray.

43.     Dr. Leon's leadership and effectiveness in achieving high quality patient service and satisfaction and staff engagement were established by: (a) his more than five years of service as University Site Medical Director frequently characterized by Dr. Kiray as excellent, (b) his selection as SCRMD and UF Local Leader by IUHP-PC Leadership in 2018, and (c) the numerous leadership positions he held within IU Health, IUHP and IU Health Plans.

*IUHP-PC's Directives*

44 .     VP Surface-Bruder issued directives ("IUHP-PC's Directives") to Dr. Leon as SCRMD and UF Local Leader requiring him to follow IUHP's Mission Statement and implement IUHP-PC's goal of becoming a world class primary care provider.

45.     She wrote in her February 2019 e-mail to Dr. Leon that: "[y]ou have tremendous experience, ideas, expertise and knowledge that is what will help IUHP Primary Care become world class."

46.     Following IUHP-PC's Directives, Dr. Leon supported: (a) hiring only the most qualified candidates, (b) providing physicians adequate and appropriate time for diagnosing and treating their patients, (c) better supervision, evaluation and compensation of IUHP-PC medical staff, and (d) motivating IUHP-PC staff to meet their full potential.

47.     (a) Under Dr. Leon's SCRMD leadership, IUHP-PC's South-Central Region experienced an improvement in service quality and patient satisfaction, and (b) under his leadership as Local Leader, UF received the Quality Pillar Award for the care it provided and achieved the highest grade rating for employee satisfaction.

48.     However, after Dr. Leon was relieved as Local Leader on April 4, 2020, UF experienced a rapid deterioration in the high rankings achieved under his leadership.

49.     Unlike Dr. Leon, Dr. Gebke did not always follow IUHP-PC's Directives.

50.     Indeed, Dr. Gebke took actions antithetical to IUHP-PC's Directives regarding new hires for IUHP-PC as demonstrated by his nepotistic hiring of a candidate for the new IUHP-PC position of director of culture and communication who not only was his friend but also the manager of the IUHP-PC facility where he practiced family medicine.

51.     Dr. Gebke made this hiring notwithstanding the opposition of Dr. Leon and three of the other four IUHP-PC RMDs who considered another candidate to be more qualified for the position.

52.     The economic losses experienced by IUHP in years 2016 through 2018 were known to IUHP-PC Leadership resulting in their: (a) behind the scene pressuring of Dr. Leon and the other IUHP-PC physicians to see as many patients as possible per four-hour session, and (b) continual effort to reduce the minutes of Electronic Medical Record  time ("EMR time") an IUHP-PC physician expended per patient per visit including the time spent (i) reviewing a patient's records, test results, labs and consultant notes, (ii) visiting with a patient in person, by phone or virtually, (iii) placing orders and (iv) completing and entering the write up after the patient's visit.

53.     In 2020, IUHP-PC Leadership set the EMR time goal at ten minutes per patient per visit.

54.     Dr. Leon expressed his judgment that an EMR time per patient per visit of ten minutes was: (a) woefully inadequate and inappropriate for his patients' highly complex illnesses, and (b) contrary to IUHP-PC's Directives for virtually all IUHP-PC physician providers' patients.

55.     IUHP-PC Leadership's continual effort to reduce the EMR time per patient per visit to generate more revenues for IUHP-PC was inconsistent with IUHP-PC's Directives, the Hippocratic Oath, patients' rights and the customs and practices of physicians board certified in internal medicine where twenty to thirty minute return visits and forty to sixty minute new visits were the custom and practice.

56.     Moreover, in contravention of IUHP-PC's Directives, IUHP-PC Leadership did

9

not consider the adverse effects on Dr. Leon's patients of: (a) lowering EMR time per visit per patient or (b) changing from a treating physician board certified in internal medicine to one board certified in family practice.

57.     Although IUHP-PC's Directives required Dr. Leon to speak freely and candidly on new hires, patient diagnosis and care times and supervision and evaluation of IUHP-PC medical staff, IUHP-PC Leadership inconsistently directed him to "keep his mouth closed," "sit on his hands," keep his ideas to himself and do what he was told to do.

58.     Dr. Leon achieved success as SCRMD, UF Local Leader and physician for his patients notwithstanding that IUHP-PC Leadership ignored IUHP-PC's Directives while requiring him to follow them.

### *The Hostile Environment Created for Dr. Leon*

59.     IUHP-PC Leadership created a particularly hostile environment for Dr. Leon as SCRMD, UF Local Leader and physician provider by: (a) summarily dismissing or ignoring altogether his input on IUHP-PC staffing, (b) allowing persons under his leadership to circumvent him and communicate directly with them, (c) making and/or distributing *ex parte* defamatory statements about his professional conduct as SCRMD, UF Local Leader and/or physician provider that caused him to suffer ridicule and embarrassment and derision of his religious tenet to always tell the truth, (d) inflicting great humiliation upon him as when he was dismissively made to stand in a hallway and viewed by his peers while IUHP-PC Leadership discussed him, and (e) evaluating his leadership based solely on second-hand and tainted comments of staff who had an axe to grind with his leadership decisions instead of information gained directly from him and the very physicians, managers, nurses and medical staff interacting with him and his patients.

60.    The reason for IUHP-PC Leadership's hostility to Dr. Leon was in part because of his support for an EMR time for his and other UF physicians' patients that adequately and correctly considered their highly complex illnesses.

61.    Without full disclosure to and consent of his patients and as previously done to other IUHP-PC physicians similarly situated to him, IUHP-PC Leadership was extremely hostile to Dr. Leon seeking to make him leave voluntarily or, if unsuccessful in that regard as it was, compelling him to leave so that he could be replaced with a less experienced and less expensive physician board certified in family medicine who typically would have a shorter EMR time per patient per visit allowing for more patient visits and increased revenues for IUHP.

62.    IUHP-PC Leadership's overt hostility toward someone as respected as Dr. Leon: (a) was intimidating for the UF administrative and medical staff, (b) emphasized that no one's job was safe even if IUHP-PC's Directives were followed, and (c) silenced potential whistleblowers.

63.    Many on UF's staff voluntarily quit over the months following the "relieving" of Dr. Leon as UF Local Leader.

64.    (a) This substantial turnover of UF personnel was unrelated to anything Dr. Leon said or did, and (b) IUHP-PC Leadership's unsupported attribution otherwise demonstrated the hostile environment confronting him.

65.    Dr. Gebke's hostility toward physicians he did not want at IUHP was demonstrated during a meeting of IUHP-PC's RMDs when his stated desire to terminate eight physicians because they were taking up too much of his time was so shocking that not one of the RMDs responded much less supported it.

*Dr. Gebke's Personal Animus for Dr. Leon*

66.     Dr. Gebke demonstrated personal animus against Dr. Leon by: (a) opposing Dr. Leon's speaking freely and openly about the challenges facing IUHP-PC and the changes necessary to meet those challenges, (b) refusing to consider and intimidating others from considering Dr. Leon's Covid-19 projects, and (c) having IUHCA management direct Dr. Leon to be silent--and listen, listen, listen--even when attending meetings that he called and was leading.

67.     On April 4, 2020, Dr. Gebke silenced Dr. Leon completely by "relieving" him from his IUHP managerial positions of SCRMD and UF Local Leader and his IUHP committee assignments.

68.     Dr. Gebke's actions on April 4, 2020 demonstrated he had: (a) never accepted the custom and practice of designating a physician board certified in internal medicine as the University Site Medical Director or UF Local Leader, (b) never favored the designation of Dr. Leon as SCRMD and UF Local Leader in August 2018, and (c) only followed that custom and practice and accepted Dr. Leon's designations until as the sole IUHP-PC Service Line Leader he was able to break with that custom and practice and nullify Dr. Leon's managerial designations.

69.     Dr. Gebke's unwillingness to have a discussion either before or after he "relieved" Dr. Leon as SCRMD and UF Local Leader demonstrated his deep personal animus against Dr. Leon.

70.     Even after delivery of the letter ("10/1/2020 Nonrenewal Letter") on October 1, 2020 purporting not to renew the 4/1/2012 Contract, Dr. Gebke: (a) was unwilling to meet with Dr. Leon to discuss the 10/1/2020 Nonrenewal Letter, (b) threatened to bring a retaliatory "for cause" termination  against him if he employed legal counsel and enforced his rights under the 4/1/2012 Contract, (c) received, made and disseminated statements disparaging his professional

conduct that were not corroborated, were not true and caused him a diminution in reputation among his peers, and (d) transferred a Leon family friend from UF to another IUHP-PC facility based on claims the UF physicians were unsatisfied with her when a formal letter sent to her boss signed by every UF physician expressed how excellent she was and how upset they were about her removal.

<em>Dr. Leon's Administrative Services</em>

71.     Dr. Leon conducted his "Administrative Services" as SCRMD and UF Local Leader according to IUHP-PC's Directives, the Hippocratic Oath, his patients' rights and the customs and practices of physicians board certified in internal medicine.

72.     Based only on his authority as an IUHP-PC Service Line Leader, on April 4, 2020, Dr. Gebke "relieved" Dr. Leon from his IUHP-PC Administrative Services leaving him free to provide physician services to his patients and teaching services for IUSOM.

73.     Dr. Gebke's appointment to and service on the IUHCA Board of Directors did not provide him authority to act as an officer of IUHCA.

74.     Dr. Leon never received notice of a written grievance made against him in connection with any of his services rendered to or in connection with IUHP over a period of more than twenty-three years.

75.     After "relieving" Dr. Leon as SCRMD, Dr. Gebke designated his friend and co-provider at IUHP-PC's Capital Facility, Dr. Jeffrey Kons ("Dr. Kons"), interim SCRMD whom he already had designated the Central Region RMD making Dr. Kons RMD for two of IUHP-PC's five regions.

76.     Dr. Gebke redrew IUHP-PC's Central and South Central Regions moving UF to the Central Region where Dr. Kons was RMD.

13

77.     Dr. Kons was: (a) board certified in family medicine, (b) more than ten years younger than Dr. Leon, and (c) relative to Dr. Leon less experienced in primary care treatment of patients with highly complex illnesses and clinical teaching.

78.     Although an UF physician board certified in internal medicine more senior than Dr. Leon was available and willing to serve as UF Local Leader, Drs. Gebke and Kons did not follow custom and practice and consider this physician and, instead, designated a physician who: (a) was a friend of Dr. Gebke, (b) worked at IUHP-PC's Capital Facility where Drs. Gebke and Kons practiced family medicine, (c) had never stepped foot into UF prior to designation as its Local Leader, (d) was board certified in family medicine, (e) was more than twenty years younger than Dr. Leon, and (f) relative to Dr. Leon was less experienced in primary care diagnosis and treatment of patients with highly complex illnesses and clinical teaching.

79.     Additionally, although an UF physician board certified in internal medicine more senior than Dr. Leon was available and willing to serve as SCRMD, Dr. Gebke appointed a physician as RMD of the redrawn South Central Region who was: (a) his friend, (b) board certified in family medicine, (c) more than ten years younger than Dr. Leon, and (d) relative to Dr. Leon less experienced in primary care diagnosis and treatment of patients with highly complex illnesses and clinical teaching.

80.     Less than two years after Dr. Leon was designated SCRMD and amidst the Covid-19 pandemic that had Dr. Leon working extraordinarily long hours to treat his patients and share as much information as possible about Covid-19 with other IUHP-PC facilities, Dr. Gebke e-mailed Dr. Leon on April 4, 2020 that, "[e]ffective immediately, I am relieving you of your RMD duties until further notice . . . [and] [t]his is not up for debate or discussion."

14

81.     Moreover, notwithstanding nearly seven years of highly successful service as University Site Medical Director or UF Local Leader, VP Surface-Bruder sent Dr. Leon an e-mail on April 10, 2020 clarifying that Dr. Gebke's April 4, 2020 e-mail included "relieving" him as the UF Local Leader and from all IUHP committees he was then serving on and stating explicitly he would have no role at IUHP-PC except as UF physician.

82.     After Dr. Leon was relieved and permanently replaced as SCRMD and UF Local Leader, all RMDs were: (a) physicians board certified in family medicine, (b) in most instances more than ten years younger than Dr. Leon, (c) mostly less experienced in primary care treatment of patients with highly complex illnesses and clinical teaching, and/or (d) new to IUHP-PC.

83.     Indeed, the physician replacing Dr. Leon was a brand-new graduate who was: (a) board certified in family medicine, (b) more than twenty years younger than Dr. Leon, and (c) relative to Dr. Leon less experienced in primary care treatment of patients with highly complex illnesses and clinical teaching.

### *Dr. Leon's Patients*

84.     Physicians like Dr. Leon who are board certified in internal medicine usually have patients with more highly complex illnesses than physicians board certified in family medicine.

85.     Dr. Leon's reputation and IUSOM faculty position resulted in primary care physicians in and around the State sending him their most complex cases.

86.     Under the "Milliman Risk Score," which measures the complexity of the illnesses of  patients treated by a physician, Dr. Leon consistently had the highest or one of the highest rankings at IUHP-PC.

87.     The diagnosis/treatment Dr. Leon provided his UF patients, including his personal knowledge of their medical history, was not interchangeable with the diagnosis/treatment they would receive from the less experienced doctor available to them after March 31, 2021.

88.     Dr. Leon's UF patients and Dr. Leon himself experienced fear, panic, and other extreme emotional distress when IUHP-PC Leadership intentionally removed him as their treating physician.

*IUHP, Dr. Leon and IUSOM Interrelationships*

89.     The Practice Leaders jointly neither discussed nor made work assignments for Dr. Leon on or before October 1, 2020.

90.     Indeed, on or before October 1, 2020, no IUHP representative: (a) notified IUSOM's academic chief, the Chairman of the IUSOM Internal Medicine Department or IUSOM's Dean of Academic Affairs that it would not pay Dr. Leon for his services as Associate Professor of Clinical Medicine after March 31, 2021, and/or (b) discussed with an IUSOM representative any change in Dr. Leon's work assignments as Associate Professor of Clinical Medicine for the 2021 IUSOM academic year and forward.

91.     Neither IUSOM's academic chief nor anyone acting on his behalf was informed of or participated in the preparation and delivery of the 10/1/2020 Nonrenewal Letter.

92.     Based on his prior history with IUHCA, applicable customs and practices and the 4/1/2012 Contract: (a) Dr. Leon was a faculty member of IUSOM, (b) his schedule for work at IUSOM and IUHP was to be established jointly from time to time by the Practice Leaders, and (c) the Practice Leaders jointly would decide if there were cause for the nonrenewal of his 4/1/2012 Contract.

93.     (a) The Practice Leaders did not jointly discuss and agree to the nonrenewal of the

16

4/1/2012 Contract as demonstrated by the ending date for Dr. Leon's 2020-21 Second Term at IUSOM occurring after the 10/1/2020 Nonrenewal Letter established the ending date of March 31, 2021 for the 4/1/2012 Contract, and (b) consequently, the 4/1/2012 Contract automatically renewed.

94.     On or before March 31, 2021, neither IUSOM's academic chief nor someone acting on his behalf notified Dr. Leon of any change in or any action taken by IUSOM to remove him from his IUSOM faculty position or his teaching assignments for the 2021 academic year.

95.     Understanding them to be made truthfully and for purposes of inducing him to enter the 4/1/2012 Contract and periodically renew it, Dr. Leon relied upon IUHP's representations that: (a) separately he would be appointed an IUSOM faculty member, (b) he could provide care to his patients expending such time as reasonable and necessary to provide the highest quality care, (c) his schedule for work at IUSOM and IUHP would be established jointly by the Practice Leaders, and (d) the Practice Leaders jointly would decide if there were cause for nonrenewal of his 4/1/2012 Contract.

96.     (a) IUSOM was a third-party beneficiary of the 4/1/2012 Contract providing for IUHP to pay for the time expended by Dr. Leon as Associate Professor of Clinical Medicine, (b) IUSOM did not terminate Dr. Leon as Associate Professor of Clinical Medicine for cause, and (c) IUHP neither notified IUSOM of any change in its third-party benefits under the 4/1/2012 Contract nor obtained IUSOM's concurrence for any such change.

97.     The 10/1/2020 Nonrenewal Letter did not provide for: (a) Dr. Leon's status at IUSOM, (b) IUHP's payment for his services as Associate Professor of Clinical Medicine after March 31, 2021, (c) the relational affiliation between IUSOM and IUHP and the attendant trade restraints precluding him from finding another position at which he could continue as Associate

Professor of Clinical Medicine, and (d) his privileges ("Staff Privileges") at Indiana University Health Downtown ("University Hospital") based on his contract with University Hospital, and IUHP's paying his expenses for maintaining those Staff Privileges.

98.     The 10/1/2020 Nonrenewal Letter belied IUHP's representation in the 4/1/2012 Contract that nothing in it "shall be interpreted as requiring that a faculty member, in signing this Agreement, relinquishes any of the rights or privileges of IU faculty members, written or implied, as contained in the IU Academic Handbook" since the 10/1/2020 Nonrenewal Letter was the cause for Dr. Leon's total loss of his rights and privileges as Associate Professor of Clinical Medicine.

### *Dr. Gebke's Agenda for IUHP-PC*

99.     Salaries are higher for: (a) physicians board certified in internal medicine relative to similarly experienced physicians board certified in family medicine, (b) more experienced physicians and increase relative to the number of years of experience, and (c) physicians diagnosing and treating patients with highly complex illnesses.

100.    Behind Dr. Gebke's removal of Dr. Leon as SCRMD and UF Local Leader and nonrenewal of his 4/1/2012 Contract was the demotion and/or elimination of: (a) older, experienced physicians board certified in internal medicine and replacement of them with substantially younger and less experienced physicians board certified in family medicine who (i) were paid less, (ii) could increase IUHP-PC's revenues because of lower EMR times, and (iii) because of their lack of experience and/or confidence were less likely to question or challenge Dr. Gebke when he did not follow IUHP-PC's Directives, (b) physicians like Dr. Leon whom Dr. Gebke thought were taking up too much of his time and spending too much time with their patients, (c) Dr. Leon for whom he had personal animosity, (d) male physicians like Dr. Leon

even though the majority of IUHP-PC physicians were female and Dr. Leon was the only male physician at UF board certified in internal medicine taking new patients, and (e) Dr. Leon because of his age and not for the implicated reasons that in and of themselves disparaged his professionalism.

101.    Dr. Leon maintained high Quality Numbers through March 31, 2021 even though UF precipitously deteriorated from the top Tier I level for both quality of patient care and employee satisfaction to an unsatisfactory Tier III level after he was "relieved" as Local Leader.

102.    (a) Throughout his more than twenty-three year career with IUHP-PC, Dr. Leon cheerfully and enthusiastically focused on caring for his nearly 2000 patients and teaching at IUSOM, and (b) Dr. Gebke's perception otherwise after 4/4/2020 failed to consider the gravitas and emotional distress of the Covid-19 pandemic including the disturbing loss of Covid-19 patients, the unknown Covid-19 threat to Dr. Leon and his family and the necessity of Dr. Leon to distance himself from co-workers to the extent possible to protect them and himself.

*10/1/2020 Nonrenewal Letter*

103.    The 10/1/2020 Nonrenewal Letter: (a) was not signed by an authorized IUHCA officer, (b) provided no reason for IUHP's nonrenewal of the 4/1/2012 Contract, (c) afforded Dr. Leon no opportunity to respond as demonstrated by Dr. Gebke's statement that the matter was not open for discussion, (d) incorrectly stated Dr. Leon would be bound by the non-solicitation provision in the 4/1/2012 Contract when after October 1, 2020 the non-solicitation provision was as equally inapplicable to Dr. Leon as the covenant not to compete, and (e) was not made in good faith and did not deal fairly with Dr. Leon since it was retaliation for the voluntary departure and low morale of many of the UF staff after Dr. Leon was "relieved" as Local Leader even though he had nothing to do with those voluntary departures and low morale.

19

104.    The 10/1/2020 Nonrenewal Letter admitted Dr. Leon was "capably" rendering his

services under the 4/1/2012 Contract establishing that IUHP did not have cause to terminate him.

as of October 1, 2020,

105.    There was no cause and IUHP did not provide Dr. Leon notice of any cause

pursuant to Section 5.1(d) of the 4/1/2012 Contract for terminating him on or after October 1,

2020 through March 31, 2021.

106.    The 4/1/2012 Contract automatically renewed because prior to October 2, 2020

IUHP did not: (a) mutually agree with Dr. Leon in writing to the termination of the 4/1/2012

Contract, (b) claim Dr. Leon had a permanent disability, (c) notify Dr. Leon in writing of any

breach by him, material or otherwise, of the 4/1/2012 Contract, (d) terminate Dr. Leon for cause

under Section 5.1(d) of the 4/1/2012 Contract, (e) consult with IUSOM's academic chief

regarding the termination of Dr. Leon or the nonrenewal of the 4/1/2012 Contract, (f) consult

with the Practice Leaders and mutually agree to the nonrenewal of the 4/1/2012 Contract, and (g)

arrange for an authorized officer of IUHCA to notify Dr. Leon in writing that the 4/1/2012

Contract would not be renewed.

*Emotional Distress Inflicted Serious Health Problems*

107.    Without good or just reason, IUHP-PC Leadership inflicted insufferable

emotional distress on Dr. Leon and his wife, Deborah, by exhibiting extreme hostility toward Dr.

Leon after he was designated the SCRMD and UF Local Leader in August 2018 and "relieving"

him from those positions on April 4, 2020 during the Covid-19 pandemic.

108.    The severity and effect of this emotional distress on Deborah manifested itself

when she  suffered a major stroke in September 2020 that: (a) required and will require medical

treatment and assistance for the rest of her life, (b) resulted in permanent physical injury to her,

(c) caused and will continue to cause her pain and suffering for the rest of her life, and (d) caused Dr. Leon a loss of consortium.

109.    In September 2020, Dr. Leon took family leave to be home with his wife.

110.    Although Dr. Leon contemplated requesting a change from UF to another IUHP-PC facility so he could be nearer to his wife who was at home, Dr. Gebke's personal animus precluded him from doing so and added to the already intolerable emotional distress inflicted on Dr. Leon and his wife, Deborah.

111.    The 10/1/2020 Nonrenewal Letter added to the already significant emotional distress suffered by the Leon family since it was delivered less than three weeks after Dr. Leon had returned from his family leave of absence taken because of his wife's major stroke.

112.    The effect of this emotional distress on Dr. Leon manifested itself when he suffered an aggravation of the arthritis and spinal stenosis in his neck resulting from the neck tension deviating the spine in his neck, impinging upon his spinal nerve root and causing terrible pain and its radiation into his left arm that: (a) required (i) treatment by two different procedures, *viz*., Epidural Steroid Injection and CT-guided Cervical Facet Steroid Injection, (ii) counselling to help manage the stress, (iii) a mild anxiety medication that was prescribed by IUHP physician, Dr. Michael Johnson, (iv) physical therapy, (v) chiropractic care, (vi) other medications and (vii) MRI and neurosurgery visits indicating a need for surgery at some point, and (b) caused a loss of consortium by Deborah.

113.     Dr. Gebke's actions were extremely hurtful to Dr. Leon and Deborah's teenage children and inflicted extreme mental anguish that has yet to manifest itself fully.

114.    While Dr. Leon and Deborah undertook measures to protect their teenage son and daughter, those measures only served to magnify the mental anguish, emotional distress and physical health injury suffered by them.

115.   Even with his and his family's own mental anguish and emotional distress and resulting physical injuries, Dr. Leon: (a) did not abandon his UF patients and, instead, stayed at UF as a physician provider, (b) did not encourage any employee of IUHP-PC to leave, (c) did not disparage any employee of IUHP-PC, and (d) with the Covid-19 pandemic front and center, found the work challenge and satisfaction he sought by caring for his patients and continuing his teaching at IUSOM.

116.    Dr. Gebke was acting under his IUHP scope of authority when he conducted his hostile and retaliatory actions against Dr. Leon.

<em>IUHP's Letter to Dr. Leon's Patients</em>

117.    IUHP-PC drafted a letter to be sent to Dr. Leon's patients under his signature that Dr. Leon rejected unless changes were made to it.

118.    IUHP-PC did not make all the changes demanded by Dr. Leon before it sent the letter out to his patients.

119.    Over Dr. Leon's name, the letter ("2/1/2021 Letter") IUHP sent to Dr. Leon's patients on February 1, 2021 endorsed physicians at IUHP-PC as "highly skilled" when Dr. Leon specifically had informed IUHP that a letter with such language was not acceptable.

**COUNT I:**
**CONTRACT CLAIM**

120.    Dr. Leon incorporates by reference the allegations in the paragraphs above.

121.    The 4/1/2012 Contract was an adhesion contract, and any ambiguity in it must be read in favor of Dr. Leon and against IUHP.

122.     An implied covenant of good faith and fair dealing must be read into the 4/1/2012

Contract because of: (a) the fiduciary relationship between Dr. Leon as principal and IUHP as

agent, (b) the "special relationship" between Dr. Leon and IUHP where Dr. Leon (i) concurrently

provided services for IUHP and IUSOM, a third-party beneficiary of the Contract, (ii) was

supervised by IUHP and IUSOM independently as well as jointly and (iii) was the subject of

work assignments jointly made by IUHP and IUSOM, (c) IUHP's Section 501(c)(3) status, (d)

IUHP-PC's Directives, and (e) the 4/1/2012 Contract being an adhesion contract.

123.     The "Limitations" upon Dr. Leon found in Article VI and Sections 7.5, 7.9, 7.15

and 7.16 of the 4/1/2012 Contract were ineffective and unenforceable because: (a) the Contract

was an adhesion contract, (b) they conflicted with IUHP's fiduciary duties to Dr. Leon, (c) any

action by IUHP to enforce them would be a material breach of its duty to act in good faith

toward and deal fairly with Dr. Leon, and (d) they were inconsistent with the customs and

practices impliedly or expressly a part of the Contract.

124.     Alternatively, _if_ the Limitations rendered the 4/1/2012 Contract entirely

ineffective and unenforceable, or the Contract for any other reason was found entirely ineffective

and unenforceable, Dr. Leon claims IUHP was unjustly enriched by its receipt of: (a) the

payments remitted to IUHP for Dr. Leon's services to his patients less the amounts IUHP paid to

or incurred on behalf of Dr. Leon, and (b) the value of Dr. Leon's practice (the "Leon Practice")

that IUHP retained for itself after March 31, 2021 when it assigned his patients to other IUHP-

PC physician providers.

125.     The 4/1/2012 Contract was premised on: (a) Dr. Leon concurrently having an

IUSOM faculty position, (b) IUHP paying Dr. Leon for his IUSOM services, and (c) Dr. Leon's

IUSOM faculty position providing him the equivalency of tenure allowing his termination only

for cause.

126.     The 10/1/2020 Nonrenewal Letter was ineffective and unenforceable because: (a) IUHP did not timely notify IUSOM of the nonrenewal of the 4/1/2012 Contract, (b) IUHP and IUSOM did not act concurrently to end their respective relationships with Dr. Leon, and (c) IUSOM did not unilaterally end its relationship with Dr. Leon for cause.

127.     Properly interpreted, the ambiguous Section 1.2 of the 4/1/2012 Contract required the Practice Leaders and Dr. Leon jointly to agree to any nonrenewal of the 4/1/2012 Contract other than for cause, and since that did not occur, the 10/1/2020 Nonrenewal Letter was ineffective and unenforceable.

128.     The 10/1/2020 Nonrenewal Letter was ineffective and unenforceable because: (a) the 4/1/2012 Contract was based on and interrelated with the contractual/business relationships between (i) Dr. Leon and IUSOM, (ii) IUSOM and IUHP, (iii) Dr. Leon and University Hospital regarding his Staff Privileges, (iv) University Hospital and IUHP and (v) Dr. Leon and each of his patients, and (b) before delivering the 10/1/2020 Nonrenewal Letter to Dr. Leon, IUHP did not notify those parties about the nonrenewal, obtain their concurrence with it and/or show they were not adversely affected by it.

129.     (a) The 4/1/2012 Contract requirement that Dr. Leon have and maintain Staff Privileges at University Hospital was coextensive with the Dr. Leon and University Hospital relationship providing him Staff Privileges, and (b) the 10/1/2020 Nonrenewal Letter was ineffective and unenforceable because Dr. Leon did not voluntarily agree to a termination of those Staff Privileges and/or there was not a peer review committee termination of them "for cause."

24

130.     (a) The 4/1/2012 Contract automatically renewed because the 10/1/2021

Nonrenewal Letter was ineffective and unenforceable, and (b) IUHP was in material breach

when it failed to perform under the 4/1/2012 Contract including the timely making of the

payments required of it.

131.     The actions of IUHP that were not made in good faith and did not deal fairly with

Dr. Leon were material breaches of the 4/1/2012 Contract including: (a) the nepotism IUHP-PC

Service Line Leader Gebke exhibited in his hirings and appointments, (b) the hostile work

environment IUHP fostered for Dr. Leon, (c) Dr. Gebke's personal animus against Dr. Leon, (d)

Dr. Gebke's failure to follow the customs and practices applicable to IUHP's relationship with

Dr. Leon, and (e) Dr. Gebke's unjustified retaliation against Dr. Leon for the voluntary departure

and low morale of many of the UF staff.

132.     IUHP also materially breached the 4/1/2012 Contract when it: (a) assigned Dr.

Leon the responsibility of (i) being UF Local Leader, being SCRMD, managing consolidation of

another IUHP primary care facility with UF, serving on IUHP Committees and creating and

implementing the Chronic Opioid Therapy reduction and management program ("COT

Program"), (ii) did not commensurately compensate him and (iii) did not mutually amend the

Contract in writing to address those changes, (b) applied the Section 6.1(c) "non-solicitation"

provision of the Contract against Dr. Leon since IUHP's ostensible termination of Dr. Leon

under Section 1.2 of the Contract did not allow application of Section 6.1(c) to Dr. Leon going

forward, (c) did not fulfill the contractual representation that it would not negatively affect his

physician career which even then encompassed more than fourteen years of prior service with

IUHP, (d) did not renew the Contract since any termination/nonrenewal of it was required to be

made for cause and any act of Dr. Leon as UF Local Leader, SCRMD or performed on a basis

other than the Contract could not support the Contract's nonrenewal and/or termination "for cause," (e) failed to effect and enforce the Contract "jointly" with IUSOM, (f) did not renew the Contract even though Dr. Leon (i) performed his duties as physician under the Contract in an exemplary manner and under the worse of conditions and (ii) showed extraordinary leadership and people skills based on his many years of service as University Site Medical Director and his selection and service as SCRMD, and (g) by the 10/1/2020 Nonrenewal Letter contravened the representation in the Contract that it would not negatively affect Dr. Leon's position and tenure/longevity/career at IUSOM.

**WHEREFORE**, Dr. Leon claims injury from IUHP's material  breaches of the 4/1/2012 Contract and demands judgment against IUHP for: (a) damages for the work he performed (i) as UF Local Leader from April 2013 through April 4, 2020, (ii) as SCRMD from August 1, 2018 through April 4, 2020, (iii) in the consolidation of a primary care facility with UF, (iv) on the IUHP Committees, and (v) in creating and implementing the COT Program, (b) damages for the payments he would have received for his service at IUSOM beginning on April 1, 2021 and going forward to his retirement at age 70, (c) damages for any diminution in payments for his physician services from April 1, 2021 and going forward to his retirement at age 70 based on the payments expected in his IUHP position less the payments expected in his new position, (d) damages for the loss of academic reputation and personal satisfaction because of his inability to maintain his faculty position of Associate Professor of Clinical Medicine at IUSOM, (e) pre- and post-judgment interest at the maximum allowable rate, (f) attorney's fees and reasonable costs, and (g) all other relief deemed proper and just.

## COUNT II:
## AGENCY RELATIONSHIP CLAIM

26

133.     Dr. Leon incorporates by reference the allegations in the paragraphs above.

134.     An agency relationship existed between IUHP and Dr. Leon as manifested by the consent of the principal, Dr. Leon, and the consent of the agent, IUHP, that: (a) IUHP would provide administrative services for Dr. Leon and non-physician medical services for his patients as he directed, and (b) he would provide physician services for his patients.

135.     As agent for Dr. Leon, IUHP owed him duties including dealing fairly with him, acting in good faith toward him and solely for his benefit, and avoiding any position where its own interests were potentially antagonistic to his.

136.     IUHP breached its duties to Dr. Leon when it: (a) had him provide uncompensated services, (b) relieved him of his UF Local Leader and SCRMD positions although he had followed IUHP-PC's Directives, (c) failed to keep him fully informed as to its rules and policies and changes thereto, (d) refused to renew the 4/1/2012 Contract in retaliation for the voluntary departure and low morale of many of the UF staff after he was removed as Local Leader for which he was not responsible, (e) allowed and promoted a hostile environment against him at IUHP-PC in support of its effort to demote and get rid of him, and (f) permitted Dr. Gebke to make decisions affecting him including the nonrenewal of the 4/1/2012 Contract notwithstanding Dr. Gebke's personal animus against him.

**WHEREFORE**, Dr. Leon claims injury from IUHP's breaches of the agency relationship between IUHP and him and demands judgment against IUHP for: (a) damages as set forth in the ad damnum clause for Count I, subparagraphs (a) thru (d), and incorporated herein, (b) damages for the foreseeable mental anguish and emotional distress he suffered, (c) pre- and

post-judgment interest at the maximum allowable rate, (d) attorney's fees and reasonable costs, and (e) all other relief deemed proper and just.

**COUNT III:**
**INDIANA WAGE PAYMENT STATUTE CLAIM**

137.    Dr. Leon incorporates by reference the allegations in the paragraphs above.

138.    Any unpaid amount IUHP owes Dr. Leon for services rendered or that would have been rendered except for IUHP's intentional wrongful conduct is a wage and/or benefit for purposes of Ind. Code §22-2-5-2 .

**WHEREFORE**, Dr. Leon claims injury from IUHP's failure to pay him as required by Ind. Code §22-2-5-2 and demands judgment for: (a) damages as set forth in the ad damnum clause for Count I, subparagraphs (a) thru (d), and incorporated herein, (b) damages for the value of the Leon Practice that IUHP took when it assigned Dr. Leon's patients to other IUHP-PC physician providers, (c) an amount as liquidated damages equal to double the sum of all unpaid amounts IUHP owed to Dr. Leon, (d) pre- and post-judgment interest at the maximum allowable rate, (e) reasonable attorneys' fees and costs, and (f) all other relief deemed proper and just.

**COUNT IV:**
**FRAUDULENT MISREPRESENTATION CLAIMS**

139.    Dr. Leon incorporates by reference the allegations in the paragraphs above.

140.    The 2/1/2021 Letter sent to Dr. Leon's patients represented as facts that he had authorized it and endorsed physicians at IUHP-PC as "highly skilled."

141.    IUHP knew that: (a) those representations were false when it sent the 2/1/2021 Letter to Dr. Leon's patients, and (b) Dr. Leon's patients justifiably would rely upon them as they did.

142.    IUHP made those fraudulent misrepresentations to: (a) induce Dr. Leon's patients

28

to obtain their primary care physician services at UF after Dr. Leon was no longer there, and (b) take over the Leon Practice.

143.   IUHP is liable for fraudulent misrepresentation because: (a) Dr. Leon's patients suffered injury when they were assigned to IUHP-PC physicians who unlike Dr. Leon did not have a history with them, were not board certified in internal medicine and were not experienced in treating patients with highly complex illnesses, and (b) Dr. Leon suffered a loss when IUHP took the Leon Practice.

144.   Furthermore, IUHP is liable to Dr. Leon for fraudulent misrepresentation because to induce Dr. Leon to make and renew the 4/1/2012 Contract, IUHP knowingly made representations therein that were untrue when made, justifiably relied upon by Dr. Leon and the cause of injury to Dr. Leon.


**WHEREFORE**, Dr. Leon claims injury for his patients and himself resulting from the fraudulent misrepresentations made in the 2/1/2021 Letter and for himself for the fraudulent misrepresentations made in the 4/1/2012 Contract and the renewals thereof and demands judgment against IUHP for payment of: (a) damages as set forth in the ad damnum clause for Count I, subparagraphs (a) thru (d), and incorporated herein, (b) damages for the value of the Leon Practice misappropriated by IUHP, (c) damages resulting from the emotional, psychological and physical injury suffered by Dr. Leon and his patients because of his unavailability to treat them and the foreseeable mental anguish and emotional distress otherwise suffered by Dr. Leon and his patients, (d) punitive damages, (e) pre- and post-judgment interest at the maximum allowable rate, (f) reasonable attorneys' fees and costs, and (g) all other relief deemed proper and just.

## COUNT V:
## UNJUST ENRICHMENT CLAIM

145.    Dr. Leon incorporates by reference the allegations in the paragraphs above.

146.    (a) Dr. Leon rendered services to IUHP as (i) University Site Medical Director from April 2013 through August 18, 2018, (ii) UF Local Leader from August 18, 2018 through April 4, 2020 and (iii) SCRMD from August 18, 2018 through April 4, 2020, (b) those services were not provided under the 4/1/2012 Contract, and (c) IUHP accepted the benefits of those services but did not pay Dr. Leon for them.

147.    On his own time, before work, after work and on the weekends, Dr. Leon, in collaboration with a team assembled by him, created a multifaceted, comprehensive COT Program.

148.    Dr. Leon: (a) wrote the COT Program, (b) acted as its Chair, (c) piloted it at UF, (d) distributed it to other IUHP-PC facilities, (e) educated providers at those facilities on the Program resulting in it being used for all IUHP-PC facilities indefinitely, and (f) served as liaison between IU Health and IUHP regarding the Program.

149.    (a)  IUHP accepted the benefits of the services Dr. Leon expended on the COT Program, (b) Dr. Leon did not have to provide them under the 4/1/2012 Contract, and (c) IUHP did not pay him for them.

150.    (a) Until April 4, 2020, Dr. Leon participated and played a significant role on critical "IUHP Committees" including the Evolent Pharmacy and Therapeutics Committee for IU Health Plans, IU Health Plans Quality and Credentialing Committee, IU Health System Chronic Opioid Committee, the Behavioral Health Collaborative Committee, and the IU Health Opioid Steering Committee, and (b) his removal from those Committees among other things impeded

IUHP's ability to address the opioid crisis and eliminated the only critical link between IU Health and IUHP in the opioid mission.

151.   (a) Dr. Leon served on those IUHP Committees for more than ten years although he was not required to do so by the 4/1/2012 Contract, and (b) while IUHP accepted the benefits of his service, it did not pay him.

152.   In August 2018, IUHP-PC Leadership asked Dr. Leon to provide services ("UF Consolidation Services") for the consolidation of physicians, supporting staff and equipment of an IUHP primary care facility with UF.

153.   Quality Number is a metric measuring the effectiveness of patient treatment administered by a physician, and because the primary care physicians at UF had achieved 100% of the Quality Numbers set for them before the UF Consolidation, they were anxious their Quality Numbers and correlatively their pay would not go down after the UF Consolidation.

154.   Dr. Leon expended substantial time allaying those anxieties and resolving issues the UF Consolidation created for staff resulting in the (a) maintenance of his high Quality Numbers as a treating physician that were the highest or among the highest of the IUHP-PC physicians, and (b) achievement of 100% of the Quality Numbers set for the UF primary care physicians.

155.   (a) Dr. Leon did not have to provide those UF Consolidation Services under the 4/1/2012 Contract, and (b) while IUHP accepted the benefits of those Services, it did not pay him for them.

156.   IUHP received and accepted the measurable benefits of the Leon Practice, did not pay Dr. Leon for them and unlawfully appropriated them by: (a) refusing to (i) renew the 4/1/2012 Contract, (ii) notify his patients timely that he was leaving UF and would continue his

practice at another location and (iii) timely provide his patients contact information for him, and (b) directing his Patients to other IUHP-PC physicians via an endorsement falsely attributed to Dr. Leon.

157.    IUHP was unjustly enriched by the measurable benefits it received and accepted from Dr. Leon without payment including the: (a) UF Medical Director/Local Leader Services, (b) SCRMD Services, (c) COT Program Services, (d) IUHP Committees Services, (e) UF Consolidation Services, and (f) Leon Practice.


**WHEREFORE**, Dr. Leon claims injury from the unjust enrichment of IUHP and demands judgment against it for: (a) damages for the work he performed (i) as University Site Medical Director, UF Local Leader and SCRMD, (ii) on the IUHP Committees, (iii) in the consolidation of an IUHP-PC facility with UF and (iv) in creating and implementing the COT Program, (b) damages for the value of the Leon Practice, (c) damages for pain, suffering, fright, humiliation, mental anguish and emotional distress, (d) pre- and post- judgment interest at the maximum allowable amount, (e) reasonable attorneys' fees and costs, and (f) all other relief deemed proper and just.

## COUNT VI:
## INTERFERENCE CLAIM
## DR. LEON'S IUSOM RELATIONSHIP

158.    Dr. Leon incorporates by reference the allegations in the paragraphs above.

159.    Dr. Leon's more than twenty-three year teaching relationship ("Leon-IUSOM Relationship") with IUSOM was defined by customs and practices, IUSOM's administrative rules and policies and the 4/1/2012 Contract.

160.    IUHP either knew or was charged by law with knowing: (a) the Leon-IUSOM

Relationship existed, and (b) the Practice Leaders had to determine jointly the time assigned for Dr. Leon to provide services as Associate Professor of Clinical Medicine at IUSOM.

161.    Under the 4/1/2012 Contract, Dr. Leon was: (a) required to maintain his faculty position with IUSOM, and (b) allowed to teach at IUSOM without any diminution in the payments IUHP otherwise would have made to him had his time teaching been expended at IUHP-PC.

162.    Before acting on Dr. Leon's teaching assignments at IUSOM including the nonrenewal or termination of the 4/1/2012 Contract, IUHP's Service Line Leader had to discuss and jointly reach an agreement with IUSOM's Chief of Academic Staff on the teaching assignments for Dr. Leon as Associate Professor of Clinical Medicine.

163.    No such agreement was reached as demonstrated by the absence of any IUSOM notice to Dr. Leon that: (a) he no longer was an IUSOM faculty member, and/or (b) a "for cause" hearing would be held to consider the termination of his status as Associate Professor of Clinical Medicine.

164.    IUHP intentionally interfered with the Leon-IUSOM Relationship because the IUHP-PC Service Line Leader and IUSOM's Chief of Academic Staff neither discussed nor reached agreement on an IUSOM teaching assignment for Dr. Leon.

165.    Moreover, IUHP intentionally interfered with the Leon-IUSOM Relationship because after March 31, 2021 it would not pay Dr. Leon for his work as Associate Professor of Clinical Medicine even though IUSOM had transferred funds to IUHP for making that payment.

166.    There was no justification for IUHP's interference with the Leon-IUSOM Relationship because: (a) there was no basis for IUHP to terminate Dr. Leon "for cause" under Section V of the 4/1/2012 Contract, (b) the 10/1/2020 Nonrenewal Letter was ineffective and

33

unenforceable, and/or (c) the Practice Leaders did not <u>jointly</u> decide upon Dr. Leon's teaching assignments.

**WHEREFORE**, Dr. Leon claims injury from IUHP's interference with the Leon-IUSOM Relationship and demands judgment against IUHP for: (a) damages for the payments that would have been made to Dr. Leon as Associate Professor of Clinical Medicine from April 1, 2021 forward to his date of retirement at age 70, (b) damages for the loss of academic reputation and personal satisfaction because of his inability to continue as an Associate Professor of Clinical Medicine at IUSOM, (c) damages for his suffering, humiliation, mental anguish and emotional distress, (d) punitive damages, (e) pre- and post-judgment interest at the maximum allowable amount, (f) reasonable attorneys' fees and costs, and (g) all other relief deemed proper and just.

### COUNT VII:
### INTERFERENCE CLAIM
### <u>DR. LEON'S UNIVERSITY MEMBERSHIP</u>

167.     Dr. Leon incorporates by reference the allegations in the paragraphs above.

168.     Dr. Leon's Medical Staff Membership ("University Membership") with University Hospital was contractual in nature.

169.     IUHP knew or was charged by law with knowing the University Membership could be terminated only after a peer review committee determined there was "cause" or there was mutual agreement of the parties for such termination.

170.     The 10/1/2020 Nonrenewal Letter intentionally interfered with Dr. Leon's University Membership because it did not allow for a termination of the University Membership on a basis mutually acceptable to all affected parties or after a peer review committee

34

determination.

171.     There was no justification for IUHP's interference with the University

Membership because: (a) the 10/1/2020 Nonrenewal Letter was ineffective and unenforceable,

and (b) the 4/1/2012 Contract automatically renewed.


**WHEREFORE**, Dr. Leon claims injury from IUHP's interference with his University

Membership and demands judgment against IUHP for: (a) damages for the loss of his University

Membership, (b) damages for his loss of reputation and public esteem, (c) damages for his pain,

suffering, fright, humiliation, mental anguish and emotional distress, (d) punitive damages, (e)

pre- and post-judgment interest at the maximum allowable rate, (f) reasonable attorneys' fees and

costs, and (g) all other relief deemed proper and just.

**COUNT VIII:**
**INTERFERENCE CLAIMS**
**DR. LEON-PATIENTS' CONTRACTS**

172.     Dr. Leon incorporates by reference the allegations in the paragraphs above.

173.     (a) The doctor-patient relationship ("Dr. Leon-Patient Contract") between Dr.

Leon and each of his UF patients was contractual in nature, (b) IUHP did not have a doctor-

patient relationship with any of Dr. Leon's patients and was not a party to any of the Dr. Leon-

Patient Contracts, (c) the 4/1/2012 Contract was coextensive with each and every one of the Dr.

Leon-Patient Contracts, (d) any nonrenewal of the 4/1/2012 Contract was precluded if there was

a Dr. Leon-Patient Contract and no termination of Dr. Leon for cause, (e) each of the Dr. Leon-

Patient Contracts could only be terminated by the parties to it and neither Dr. Leon nor any of his

patients voluntarily cancelled a Dr. Leon-Patient Contract, and (f) Dr. Leon has standing under

Indiana law to seek relief including monetary damages for injury to not only himself but also his

patients.

174.    The 10/1/2020 Nonrenewal Letter, the 2/1/2021 Letter and IUHP's material breaches of the 4/1/2012 Contract interfered with the Dr. Leon-Patient Contracts because: (a) after March 31, 2021, he could not treat his patients at UF, (b) constraints in his patients' health insurance and/or the inconvenient location of his new office made it infeasible for some to follow him, (c) IUHP did not timely provide his patients contact information for him, (d) IUHP assigned his patients to other IUHP-PC physician providers, (e) IUHP fraudulently misrepresented in the 2/1/2021 Letter his endorsement of the skill of physician providers at UF, (f) IUHP's administrative procedures impeded the timely transfer of his patients' medical records to him, and/or (g) patients were psychologically and/or physically unable to transfer to his new office.

175.    There was no justification for IUHP's interference with the Dr. Leon-Patient Contracts because: (a) the 10/1/2020 Nonrenewal Letter and the 2/1/2021 Letter were ineffective and unenforceable, (b) there was no "for cause" basis under Section V of the 4/1/2012 Contract for IUHP terminating Dr. Leon, (c) Dr. Leon's patients were denied their procedural due process rights for timely notice of the Contract's nonrenewal and reasonable opportunity to provide input on the burdens and the risks presented if Dr. Leon were removed as their primary care physician other than for cause, and (d) IUHP knew or was chargeable by law to know it had no legal basis for imposing the non-solicitation provision in Section 6.1(c) of the Contract and prohibiting him from contacting his patients about his leaving UF and advising them where he would be practicing.

**WHEREFORE**, on behalf of himself and his patients, Dr. Leon claims injury from IUHP's interference with each of the Dr. Leon-Patient Contracts and demands judgment against

IUHP for: (a) damages for himself equal to the value of the Leon Practice, (b) damages for the physical injury, including death, and pain and suffering of his patients resulting from his unavailability to care for them, (c) damages for the expenses incurred and the time expended by his patients to find another primary care physician to care for them, (d) damages for the fright, humiliation, mental anguish, emotional distress and physical injury, death, and pain and suffering by him and his patients resulting from IUHP's unjustified interference with the Dr. Leon-Patient Contracts, (e) punitive damages, (f) pre- and post-judgment interest at the maximum allowable rate, (g) reasonable attorneys' fees and costs, and (h) all other relief deemed proper and just.

**COUNT IX:**
**INFLICTION OF**
**EMOTIONAL DISTRESS CLAIMS**

176.    Plaintiffs incorporate by reference the allegations in the paragraphs above.

177.    The extreme and outrageous conduct of IUHP that intentionally and/or recklessly inflicted severe emotional distress on Dr. Leon and his wife, Deborah, included: (a) the hostile environment Dr. Leon encountered at IUHP-PC, (b) Dr. Gebke's animus toward Dr. Leon, (c) Dr. Gebke's threat to initiate a "for cause" termination of Dr. Leon if he pursued his rights under the 4/1/2012 Contract, (d) the sending of the 10/1/2020 Nonrenewal Letter shortly after Deborah had suffered a major stroke and Dr. Leon had just returned from family leave during which he had cared for her, (e) the fraudulent misrepresentations in the 2/1/2021 Letter, and (f) the inescapable interconnection of Deborah to the emotional distress suffered by Dr. Leon.

178.    (a) IUHP inflicted emotional distress that substantially contributed to or was the complete cause of (i) the major stroke suffered by Deborah and (ii) the aggravation of the arthritis and spinal stenosis in Dr. Leon's neck, and (b) those physical injuries in turn caused Dr.

Leon and Deborah to suffer additional, continuing emotional distress that aggravated their physical injuries and required further diagnosis and treatment.

179.    The extreme and outrageous conduct of IUHP that intentionally and/or recklessly inflicted severe emotional distress on Dr. Leon and his patients included: (a) contravening (i) IUHP-PC's Directives, (ii) IUHP's duties of conduct as a nonprofit corporation with a 501(c)(3) tax exempt status, (iii) IUHP's fiduciary duties to Dr. Leon allowing him to exercise his best professional judgment and act in the best medical interest of his patients and (iv) the rights of Dr. Leon and his patients to life, liberty and property by treating Dr. Leon's patients as IUHP-PC physician patients when they were not and could not be, and (b) requiring Dr. Leon to meet with his patients and personally advise them of his unavailability to continue as their physician at UF.

180.    (a) IUHP inflicted emotional distress on Dr. Leon and his patients that substantially contributed to or was the complete cause of (i) the aggravation of the arthritis and spinal stenosis in Dr. Leon's neck requiring him to obtain diagnosis and treatment and (ii) the deterioration in the health of many of his patients as demonstrated by IUHP's medical records for his patients and the Quality Numbers for the UF physicians treating his patients after March 31, 2021, and (b) those physical injuries in turn caused Dr. Leon and his patients to suffer additional, continuing emotional distress that further aggravated their health conditions.

**WHEREFORE,** Plaintiffs and Dr. Leon on behalf of his patients claim injury from IUHP's intentional infliction of emotional distress and demand judgment against IUHP for: (a) damages for (i) medical treatment of and long-term care for each of Deborah, Dr. Leon and Dr. Leon's patients, (ii) loss of wages and benefits by Deborah from September 2020 going forward to her age of retirement of 65, (iii) the pain, suffering, fright, humiliation and mental anguish

suffered by each of Dr. Leon, Deborah and Dr. Leon's patients and (iv) deterring IUHP's bad behavior toward Plaintiffs and Dr. Leon's patients, (b) pre- and post- judgment interest at the maximum allowable rate, (c) reasonable attorneys' fees and costs, and (d) all other relief deemed proper and just.

### COUNT X:
### THIRD-PARTY BENEFICIARY CLAIM
### ON BEHALF OF DR. LEON'S PATIENTS

181.    Dr. Leon incorporates by reference the allegations in the paragraphs above.

182.    IUHP is liable to Dr. Leon's patients for the third-party benefits due them under the 4/1/2012 Contract because: (a) Dr. Leon's patients are third-party beneficiaries of the Contract and have never relinquished their third-party beneficiary rights, (b) IUHP did not terminate the Contract "for cause" under Article V and thereby extinguish those rights, and (c) the 10/1/2020 Nonrenewal Letter was ineffective and unenforceable.

183.    IUHP failed to mitigate the harm to Dr. Leon's patients, *i.e.*, the third-party beneficiaries, because it did not timely: (a) inform them Dr. Leon was available to treat them at another facility, (b) provide them contact information for Dr. Leon, and (c) assist them in transferring their records to Dr. Leon's new office.

184.    Dr. Leon's patients' need for his care and treatment was paramount because he: (a) had a non-transferable history with them, (b) provided them an Internal Medicine level of care specializing in patients with highly complex illnesses that no other IUHP-PC physician provider accepting new patients was doing at UF, (c) had Quality Numbers among the highest if not the highest at IUHP-PC, and (d) devoted an adequate and appropriate EMR time for his patients' diagnosis and care unimpeded by IUHP-PC Leadership's dissatisfaction with the EMR time he spent with his patients.

185.   IUHP's egregious and conscious shocking conduct toward Dr. Leon's patients and the pronounced deterioration in their health or even death after IUHP refused to make Dr. Leon available to care for and treat them established an independent tort basis for their recovery from IUHP.

**WHEREFORE,** on behalf of his IUHP-PC patients, Dr. Leon claims injury to them as third-party beneficiaries and demands judgment against IUHP for: (a) damages for the fright, humiliation, mental anguish, emotional distress and physical injury, death, and pain and suffering resulting from IUHP's making him unavailable to treat them, (b) damages for the expenses incurred and the time expended by them to find another primary care physician, (c) punitive damages, (d) pre- and post-judgment interest at the maximum allowable rate, (e) reasonable attorneys' fees and costs, and (f) all other relief deemed proper and just.

### COUNT XI:
### THIRD-PARTY BENEFICIARY CLAIM
### <u>ON BEHALF OF DR. LEON</u>

186.   Dr. Leon incorporates by reference the allegations in the paragraphs above.

187.   Dr. Leon was a third-party beneficiary of the contractual relationship (IUHP-IUSOM Contract") existing between IUHP and IUSOM that provided for IUHP to pay Dr. Leon for his services as an IUSOM faculty member.

188.   IUHP could not terminate the payments it promised to make to Dr. Leon under the IUHP-IUSOM Contract unless IUSOM terminated him as a faculty member for cause, which it did not do.

**WHEREFORE,** Dr. Leon claims injury from IUHP's failure to provide him his third-

party benefits under the IUHP-IUSOM Contract and demands judgment against IUHP for: (a) damages for the payments he would have received for his services as Associate Professor of Clinical Medicine at IUSOM beginning on April 1, 2021 and going forward to his retirement at age 70, (b) damages for the loss of academic reputation and personal satisfaction because of his inability to maintain his faculty position of Associate Professor of Clinical Medicine, (c) damages for his pain, suffering, fright, humiliation and mental anguish, (d) his reasonable attorneys' fees and costs incurred in prosecuting this third-party beneficiary claim against IUHP, (e) pre- and post- judgment interest at the maximum allowable rate, and (f) all other relief deemed proper and just.

**COUNT XII:**
**CRIME VICTIM STATUTE CLAIMS**

189.    Dr. Leon incorporates by reference the allegations in the paragraphs above.

190.    Ind. Code §35-43-4-3(a) provides that a person ". . . who knowingly or intentionally exerts unauthorized control over property of another person commits criminal conversion . . . . "

191.    Dr. Leon's patients own their respective medical records.

192.    IUHP is liable for conversion because it knowingly and intentionally exerted unauthorized control over another's property including: (a) the Leon Practice, (b) the Dr. Leon-Patient Contracts, (c) Dr. Leon's patients' medical records, and (d) the monies IUSOM paid IUHP for Dr. Leon's services as Associate Professor of Clinical Medicine that IUHP did not remit to him.

193.    Ind. Code §35-43-5-3(a) provides that "[a] person commits the crime of 'deception' when that person knowingly or intentionally makes a false or misleading written statement with the intent to obtain property."

194.    IUHP committed deception in the 2/1/2021 Letter by knowingly making false or misleading written statements with the intent to obtain the Leon Practice.

195.    IUHP also committed deception when with the intent to obtain the Leon Practice it knowingly or intentionally made the false or misleading written statement in the 10/1/2020 Letter that it was not renewing the 4/1/2012 Contract although it knew or was chargeable by law to know that it could not effect such a nonrenewal since: (a) Dr. Leon had not voluntarily resigned as Associate Professor of Clinical Medicine and IUSOM had not removed him for cause, (b) the 4/1/2012 Contract warranted Dr. Leon could provide care as reasonable and necessary to provide the highest quality care to his patients without regard to their ability to pay and IUHP could not support nonrenewal on the basis Dr. Leon was not treating enough patients and generating enough revenues, and (c) the Practice Leaders jointly had not established Dr. Leon's services when the 10/1/2020 Nonrenewal Letter was delivered to Dr. Leon.

196.    The Indiana Crime Victims Relief Act, Ind. Code 34-24-3, provides that a person ("victim") who has suffered a pecuniary loss because of a predicate violation of Ind. Code 35-43 may bring a civil action against the person who caused the loss for an amount up to three times the actual damages suffered by the victim.

**WHEREFORE**, Dr. Leon on behalf of himself and his patients claims pecuniary losses as a direct and proximate result of the predicate offenses of deception and conversion committed by IUHP against him and/or his patients and demands judgment against IUHP for: (a) damages in the amount of three times the damages (i) Dr. Leon seeks in Subparagraphs (a) thru (d) in the Ad Damnum Clause for Count I above and incorporated herein, (ii) his patients are owed for IUHP's conversion of their medical records, (iii) his patients seek in Subparagraphs (b) thru (d)

42

in the Ad Damnum Clause for Count VIII above and incorporated herein and (iv) Dr. Leon is

owed because of IUHP's conversion of the monies IUSOM paid to it for his services as

Associate Professor of Clinical Medicine, (b) the costs of the action incurred by Dr. Leon, Dr.

Leon's actual travel expenses, Dr. Leon's employee and/or agent costs, compensation for Dr.

Leon's time, Dr. Leon's reasonable attorney's fees and other reasonable costs of collection

incurred by him, (c) pre- and post- judgment interest at the maximum allowable amount, and (d)

all other relief deemed proper and just.


## COUNT XIII:
## DEFAMATION  CLAIM

197.     Dr. Leon incorporates by reference the allegations in the paragraphs above.

198.     Officers and employees ("IUHP Agents") of IUHP made and/or distributed

written and oral statements ("Defamatory Statements") about Dr. Leon as a practicing physician

that: (a) injured his reputation, (b) diminished the esteem, respect, goodwill, or confidence in

which he was held, (c) excited derogatory feelings or opinions about him, and/or (d) deterred

third persons from associating or dealing with him.

199.     IUHP-PC Leadership denied Dr. Leon any opportunity to address and

demonstrate the Defamatory Statements made against him not only were untrue but also made

and/or distributed by IUHP Agents like Dr. Gebke's office manager at the IUHP-PC Capital

Facility who had personal animus against him and/or the UF Practice Administrator who was

seeking to deflect attention to him and away from her performance deficiencies.

200.     A particularly hurtful, false Defamatory Statement made and distributed by IUHP

Agents was that Dr. Leon had a prejudice against women employees.

201.     The Defamatory Statements made and distributed by IUHP Agents were *per se*

defamations because they asserted and/or imputed conduct by Dr. Leon disparaging his professionalism as a physician provider.

202.    The 10/1/2020 Nonrenewal Letter itself was a Defamatory Statement because it falsely imputed there had to be a cause for terminating Dr. Leon of such gravitas that he dared not challenge his termination even after twenty-three years of service at IUHP.

203.    The malice the IUHP Agents making and distributing the Defamatory Statements had against Dr. Leon was demonstrated: (a) either facially in the Defamatory Statements or in the context of when and where they were made, (b) by the fact that (i) they were made by persons who previously had shown personal animus and hostility toward Dr. Leon or (ii) were made as a part of the  plan to demote and/or get rid of Dr. Leon, and (b) when the 10/1/2020 Nonrenewal Letter with its imputed Defamatory Statement was published even though IUHP-PC Leadership knew or was chargeable by law to know the 10/1/2020 Nonrenewal Letter was ineffective and unenforceable.

204.    IUHP knows best the full extent of the Defamatory Statements made and distributed because unless spoliated its records not only contain those Statements but also information identifying the IUHP Agents making them.

205.    The false Defamatory Statements in the 2/1/2021 Letter include: (a) the imputations that it was signed and authorized by Dr. Leon when in fact IUHP knew those imputed facts were false, and (b) the false statement that Dr. Leon endorsed physicians at IUHP-PC as "highly skilled" when in fact Dr. Leon specifically informed IUHP-PC that a letter with such language was unacceptable.

**WHEREFORE**, Dr. Leon claims injury from IUHP's defamation of him and demands

44

judgment against IUHP for: (a) actual damages, including damages for (i) injury to his reputation, (ii) diminishment of his esteem, respect, goodwill or confidence, (iii) excitement of derogatory feelings or opinions about him and (iv) the reluctance of third persons to associate or deal with him, (b) damages for his pain, suffering, fright, humiliation and mental anguish, (c) punitive damages, (d) pre- and post- judgment interest at the maximum allowable amount, (e) reasonable attorneys' fees and costs, and (f) and all other relief deemed proper and just.

## COUNT XIV:
## <u>INVASION OF RIGHT OF PRIVACY CLAIMS</u>

206.    Dr. Leon incorporates by reference the allegations in the paragraphs above.

207.    IUHP's delivery of the 2/1/2021 Letter to Dr. Leon's patients was an invasion of Dr. Leon's privacy because it was: (a) an unwarranted appropriation of an endorsement by him of IUHP-PC physicians at UF that he made clear he would not give, (b) a publicizing of an endorsement by him that was exploitative and at best misleading and at worse untrue, and (c) nothing short of outrageous.

208.    IUHP outrageously invaded Dr. Leon's right to privacy and the right to privacy of each of his patients because: (a) it did not provide notice to and obtain the consent of each Dr. Leon-Patient before disclosing the patient's written confidential physician-patient information to a physician other than Dr. Leon, (b) its disclosure of a Dr. Leon-Patient's written confidential physician-patient information to someone other than Dr. Leon was a public disclosure even if the information was provided to another physician, and (c) it (i) foreclosed the use of the historical physician-patient confidential information known only to Dr. Leon that often proves to be critical in a patient's care, (ii) did not allow and/or arrange for the transfer of Dr. Leon's historical physician-patient confidential information to a new treating physician and (iii) did not allow or provide for Dr. Leon and/or his patients to preserve Dr. Leon's historical physician-patient

confidential information.

209.    IUHP's actions toward Dr. Leon and his patients were highly offensive and objectionable to a reasonable person of ordinary sensibilities since they: (a) compelled each of Dr. Leon's patients to disclose anew to a physician the very same confidential information they had already provided Dr. Leon who had seen many of them for years, and (b) exposed each of them to greater health risks because of the delays in (i) disclosing their confidential information to new physicians and (ii) acquainting new physicians with their histories so those physicians could be more on par with the historical physician-patient confidential information Dr. Leon had for them.

**WHEREFORE**, Dr. Leon claims on behalf of his patients and himself injury from IUHP's invasion of their respective rights to privacy and demands judgment against IUHP for: (a) damages for himself equal to the value of the Leon Practice, (b) damages for his patients' physical injury, including death, and pain and suffering, (c) damages for the expenses incurred and the time expended by Dr. Leon and/or his patients in providing the patients' historical physician-patient confidential information to the patients' new physicians, (d) punitive damages, (e) pre- and post-judgment interest on all sums recoverable, (f) all costs and attorney's fees incurred in this action, and (g) any and all other relief deemed proper and just.

## COUNT XV:
## INTIMIDATION, HARASSMENT AND RETALIATORY
## DISCHARGE CLAIM

210.    Dr. Leon incorporates by reference the allegations in the paragraphs above.

211.    **The threat of IUHP Agent** Dr. Gebke to initiate a "for cause" termination of Dr. Leon if he hired an attorney and pursued his rights under the 4/1/2012 Contract was *per se*

46

unlawful intimidation because it was made with the intent to force Dr. Leon to engage in conduct against his will and placed him in fear of retaliation for his lawful acts.

212.    IUHP is liable *per se* for its unlawful harassment of Dr. Leon because it caused even a reasonable person like Dr. Leon to feel terrorized, frightened, intimidated or threatened when its Agent Dr. Gebke knowingly and/or intentionally demonstrated: (a) personal animus against Dr. Leon, (b) relieved Dr. Leon as UF Local Leader and SCRMD, (c) refused to renew the 4/1/2012 Contract, and (d) sent the 2/1/2021 Letter to Dr. Leon's patients.

213.    IUHP's retaliation against Dr. Leon was unlawful *per se* because it knowingly or intentionally punished him when it did not renew the 4/1/2012 Contract based on actions taken by him that are protected under federal and Indiana law including: (a) family leave taken so he could be with his wife during her recovery from a major stroke, (b) filling out FMLA paperwork for ongoing missed days due to his appointments with doctors, tests, therapy, etc., and (c) his rights to (i) protect his liberty and property and (ii) seek substantive and procedural due process and equal protection under the law.

214.    The First Amendment of the U.S. Constitution protected activities by Dr. Leon including when he spoke out against Dr. Gebke's nepotistic hirings for IUHP-PC and for improving patient diagnosis and care by allowing doctors an adequate EMR time for visiting with their patients, and since those activities were "at least a motivating factor" in Dr. Gebke's decision to retaliate against Dr. Leon by removing him as UF Local Leader and SCRMD and refusing to renew the 4/1/2012 Contract, IUHP is liable for its First Amendment retaliatory discharge of Dr. Leon.

215.    IUHP-PC Leadership's concerted intimidation, harassment and retaliation against Dr. Leon was unlawful action: (a) seeking to compel Dr. Leon to leave UF voluntarily and as

soon as possible, (b) seeking to avert away from Leadership any responsibility for Dr. Leon's leaving UF, and (c) calculated to destroy or irreparably injure the career of Dr. Leon at IUHP-PC and IUSOM.

**WHEREFORE**, Dr. Leon claims injury from IUHP's intimidation, harassment, retaliatory discharge, First Amendment retaliatory discharge and concerted action and demands judgment against IUHP for: (a) damages as requested in Subparagraphs (a) thru (d) in the Ad Damnum Clause for Count I above and incorporated herein, (b) damages for the value of the Leon Practice taken from him, (c) damages for his pain, suffering, fright, humiliation and mental anguish, (d) pre- and post- judgment interest at the maximum allowable amount, (e) punitive damages, (f) his reasonable attorneys' fees and costs, and (g) all other relief deemed proper and just.

**COUNT XVI:**
**LOSS OF CONSORTIUM CLAIMS**

216.    Plaintiffs incorporate by reference the allegations in the paragraphs above.

217.    Deborah brings her loss of consortium claim based on the personal injuries IUHP committed against her husband, Dr. Leon, as set forth in this Complaint.

218.    Dr. Leon brings his loss of consortium claim based on the personal injuries IUHP committed against his wife, Deborah, as set forth in this Complaint.

**WHEREFORE**, Dr. Leon and Deborah each make her/his claim of loss of consortium against IUHP for its personal injuries to the other as applicable and demand judgment against IUHP for damages for: (a) Dr. Leon's loss of services performed for him by his wife, Deborah, including house cleaning, childcare, family transportation, grocery shopping, laundry, social

engagements, and so forth, (b) Deborah's loss of services performed for her by her husband, Dr.

Leon, including yard work, handyman work, childcare, family transportation, grocery shopping,

social engagements, and so forth, (c) Dr. Leon's and Deborah's respective losses of aid, society,

fellowship, companionship, company, cooperation, comfort, love, care, affection, loss of sexual

relationships, mental anguish, emotional distress and any other benefits arising out of their

marital relationship, (d) Dr. Leon's and Deborah's pain, suffering, fright, humiliation and mental

anguish because of IUHP's personal injuries to Dr. Leon and Deborah, respectively, (e) punitive

damages for Dr. Leon and Deborah each because of IUHP's personal injuries to the other, (f)

pre- and post- judgment interest at the maximum amount allowable, (g) reasonable attorneys'

fees and costs, and (h) all other relief deemed proper and just.

### COUNT XVII:
### CONSTITUTIONAL AND SECTION 1983 CLAIMS

219.    Dr. Leon incorporates by reference the allegations in the paragraphs above.

220.    Although not a "state arm" under 42 U.S.C.A. §1983 ("Section 1983"), IUHP is a

"person" under Section 1983 because of its affiliation with IUSOM.

221.    IUHP is liable to Dr. Leon under Section 1983 because it took actions involving

him as UF physician provider, UF Local Leader and SCRMD that violated the First, Fifth,

Thirteenth and Fourteenth Amendments of the U.S. Constitution insofar as it denied him

procedural and substantive due process, equal protection under the law, the protection of his life,

liberty and property and the right to free speech as demonstrated by its: (a) acceptance of

services from him without payment, (b) nonrenewal of the 4/1/2012 Contract, (c) failure to pay

him for his services as Associate Professor of Clinical Medicine going forward until his

retirement age of 70, (d) failure to pay for his University Membership, and (e) imposition of

severe restraints upon his right of free speech.

222.     The existence of an Indiana constitutional right for which there is no private right of action nevertheless will support a standard for a duty.

223.     The rights of Dr. Leon under Article I, Sections 9, 12, 21 and 23 of the Constitution of the State of Indiana supported "Standards of Duty" including: (a) that Dr. Leon had to be provided a notice of and an opportunity to comment upon the 10/1/2020 Nonrenewal Letter, and (b) the nonrenewal of the 4/1/2012 Contract had to be made for cause.

224.     IUHP is liable to Dr. Leon under common law negligence because: (a) it owed him duties based on the Standards of Duty, (b) it breached those duties, and (c) he suffered proximate injury as result of those breaches.

**WHEREFORE**, Dr. Leon claims under Section 1983 and common law negligence injury by IUHP and demands judgment against it for: (a) damages as requested in Subparagraphs (a) thru (d) in the Ad Damnum Clause for Count I above and incorporated herein, (b) damages for the value of the Leon Practice appropriated by IUHP, (c) damages for his loss of Staff Privileges, (d) damages for his pain, suffering, fright, humiliation and mental anguish, (e) pre- and post-judgment interest at the maximum allowable amount, (f) punitive damages, (g) his reasonable attorneys' fees and costs, and (h) all other relief deemed proper and just.

### COUNT XVIII:
### <u>RESTRAINT OF TRADE CLAIM</u>

225.     Dr. Leon incorporates by reference the allegations in the paragraphs above.

226.     The agglomeration of physician providers by IUHP was a restraint of trade that required close scrutiny to insure there was no: (a) pernicious effect on competition, and (b) lack of redeeming virtue as to cause it to be manifestly anticompetitive, unreasonable and therefore illegal.

227.    IUHP's agglomeration of physician providers had a pernicious effect on competition because adhesion contracts made by IUHP and its physician providers: (a) imposed controls like the Limitations in the 4/1/2012 Contract ostensibly limiting their availability to provide services to their patients after their contracts were no longer effective, and (b) compelled them to direct their patients to use other medical services offered by IUHP or its affiliates even if more expensive.

228.    The lack of redeeming virtue for IUHP's agglomeration of physician providers is demonstrated by the unreasonable burdens inured by physicians and their patients when physician provider contracts like the 4/1/2012 Contract were not renewed other than for cause.

229.    A close scrutiny of IUHP's agglomeration of physician providers reveals the 4/1/2012 Contract and IUHP's nonrenewal of it for reasons other than cause was an impermissible restraint of trade that inflicted injury upon Dr. Leon for which IUHP is liable.

**WHEREFORE**, Dr. Leon claims injury from IUHP's impermissible restraint of trade and demands judgment against it for: (a) damages as requested in Subparagraphs (a) thru (d) in the Ad Damnum Clause for Count I above and incorporated herein, (b) damages for the value of the Leon Practice, (c) damages for the loss of his Staff Privileges, (d) damages for his pain, suffering, fright, humiliation and mental anguish, (e) pre- and post- judgment interest at the maximum allowable amount, (f) punitive damages, (g) his reasonable attorneys' fees and costs, and (h) all other relief deemed proper and just.

### COUNT XIX:
### AGE DISCRIMINATION CLAIM

230.    Dr. Leon incorporates by reference the allegations in the paragraphs above.

231.    Dr. Leon commenced work as a primary care physician at IUHCA in 1997 and

continuously worked there for more than twenty-three years for IUHCA d/b/a IU Medical

Group-Specialty Group, IUHCA d/b/a The Indiana Clinic and IUHCA d/b/a IUHP until he

purportedly was terminated by the 10/1/2020 Nonrenewal Letter effective March 31, 2021.

232.    Dr. Leon met or exceeded IUHCA's legitimate expectation of performance.

233.    Dr. Leon was replaced as UF Local Leader, SCRMD and UF primary care

physician by persons substantially younger who had significantly less experience and/or training

as compared to Dr. Leon.

234.    The reasons proffered by IUHP for its termination of Dr. Leon were a pretext for

unlawful discrimination because those reasons (a) were based on illegal conduct by IUHP, (b)

were legal nullities, and (c) could not support a termination of Dr. Leon "for cause" much less

without cause.

235.    Dr. Leon has suffered pecuniary and non-pecuniary harm because of IUHP's

unlawful conduct.

236.    IUHP has intentionally, willfully and with reckless disregard discriminated

against Dr. Leon because of his age in that it terminated his employment unlawfully and hired

substantially younger employees with significantly less experience as UF Local Leader, SCRMD

and UF primary care physician.


**WHEREFORE**, Dr. Leon claims injury from IUHP's  unlawful discriminatory actions

and demands judgment against IUHP for: (a) damages as requested in Subparagraphs (a) thru (d)

in the Ad Damnum Clause for Count I above and incorporated herein, (b) damages for the value

of the Leon Practice, (c) damages relating to his Staff Privileges, (d) damages for his pain,

suffering, fright, humiliation and mental anguish, (e) pre- and post- judgment interest at the

maximum allowable amount, (f) punitive damages, (g) his reasonable attorneys' fees and costs, and (h) all other relief deemed proper and just under the circumstances.

## <u>JURY DEMAND</u>

Plaintiffs demand a trial by jury.

Respectfully submitted,

/s/*George W. Pendygraft*
George W. Pendygraft,
Attorney No. 5679-49
Attorney for Plaintiffs,
Brian Leon, M.D., FACP
and Deborah Leon

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| BRIAN LEON, M.D., FACP AND DEBORAH LEON, HUSBAND AND WIFE, | ) ) ) ) | |
| Plaintiffs, | ) ) | CASE NO.  1:22-CV-937 |
| v. | ) ) | |
| INDIANA UNIVERSITY HEALTH CARE ASSOCIATES, INC., | ) ) ) | |
| Defendant. | ) | |

**EXHIBIT A TO PLAINTIFFS' COMPLAINT**
**An attachment to Defendant's Notice of Removal**

**FILED UNDER SEAL PURSUANT TO DEFENDANT'S MOTION**

Laurie E. Martin (#26877-49)
Katherine L. English (#35219-49)
HOOVER HULL TURNER LLP
111 Monument Circle, Suite 4400
P.O. Box 44989
Indianapolis, IN  46244-0989
Tel:  (317) 822-4400
Fax:  (317) 822-0234
E-mail:  lmartin@hooverhullturner.com
E-mail: kenglish@hooverhullturner.com

*Attorneys for Defendant*

| | | |
|---|---|---|
| **STATE OF INDIANA** | ) | **MARION COUNTY CIRCUIT/SUPERIOR** |
| | ) | **COURT** |
| | ) SS: | |
| | ) | |
| **COUNTY OF MARION** | ) | **CAUSE NO.:_____** |

| | |
|---|---|
| **BRIAN LEON, M.D., FACP AND** | ) |
| **DEBORAH LEON, HUSBAND AND** | ) |
| **WIFE,** | ) |
| | ) |
| | ) |
| **PLAINTIFFS,** | ) |
| | ) |
| | ) |
| **v.** | ) |
| | ) |
| | ) |
| | ) |
| **INDIANA UNIVERSITY** | ) |
| **HEALTH CARE ASSOCIATES, INC.,** | ) |
| | ) |
| | ) |
| **DEFENDANT.** | ) |

## <u>SUMMONS</u>

**TO DEFENDANT**:  **Indiana University Health Care Associates, Inc.**
**c/o Ms. Sarah Bowers**
**Associate General Counsel**
**IU Health, Inc.**
**340 W. 10th Street**
**Indianapolis, Indiana 46202**
**Tel. No. 317 459-9164**
**E-mail:  sbowers6@iuhealth.org**

You are hereby notified that you have been sued by the persons named as Plaintiffs and in the Court indicated above.

The nature of the suit against you is stated in the Complaint which is attached to this Summons.  It also states the relief sought or the demand made against you by the Plaintiffs.

If you fail to file a written appearance of record with the clerk and serve a copy on Plaintiffs' counsel, you may not receive notice of any other hearings in this action.  Failure to appear may result in a default judgment against you with respect to the relief sought.

1

An answer or other appropriate response in writing to the Complaint must be filed by you or your attorney within twenty (20) days, commencing the day after you receive this Summons, or a judgment by default may be rendered against you for the relief demanded by Plaintiffs.

If you have a claim for relief against the Plaintiffs arising from the same transaction or occurrence, you must assert it in your written answer.

Dated: 4/25/2022                                    *Myla A. Eldridge* (Seal)
                                                    Clerk, Marion County Circuit/Superior Court

## DESIGNATION OF MANNER OF SERVICE

The following manner of service of summons is hereby designated: **certified mail, return receipt requested.**

## VOLUNTARY RECEIPT AND ACKNOWLEDGEMENT OF SUMMONS

For purposes of saving expense on serving the Summons and Complaint in this case, Defendant's attorney and Plaintiffs' attorney agreed by an exchange of e-mails that Defendant Indiana University Health Care Associates, Inc. voluntarily would receive and accept service of this Summons together with the attached Complaint.

Signed: */s/ George W. Pendygraft*
Attorney for Plaintiffs

Attorney for Plaintiffs
George W. Pendygraft,                               Marion County Circuit/Superior Court
Attorney No. 5679-49                                200 East Washington Street
GEORGE W. PENDYGRAFT, P.C.                          Indianapolis, Indiana 46204
6770 Spirit Lake Drive                              Telephone No. _____
Bldg. #1, Suite #201
Indianapolis, Indiana 46220
Tel. No. 317 590-3398
E-mail: ecolawyer@aol.com

## CLERK'S CERTIFICATE OF MAILING

2

I hereby certify that on the ___ day of _____, 2022, I mailed a copy of this Summons and a copy of the Complaint to the defendant, Indiana University Health Cares, Inc., by certified mail, requesting a return receipt, at the address furnished by the Plaintiffs.

Dated:_____, 2022            _____
                                        Clerk, Marion County Circuit/Superior Court
                                        By: _____
                                                 Deputy

## RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify that the attached return receipt was received by me showing that the Summons and a copy of the Complaint mailed to defendant, Indiana University Health Care Associates, Inc., was accepted by the defendant on the ____ day of _____, 2022.

Dated:_____, 2022            _____
                                        Clerk, Marion County Circuit/Superior Court
                                        By: _____
                                                 Deputy

3

| STATE OF INDIANA | ) | MARION COUNTY CIRCUIT/SUPERIOR |
| | ) | COURT |
| | ) SS: | |
| | ) | |
| COUNTY OF MARION | ) | CAUSE NO.:_____ |

| BRIAN LEON, M.D., FACP AND | ) |
| DEBORAH LEON, HUSBAND AND | ) |
| WIFE, | ) |
| | ) |
| | ) |
| PLAINTIFFS, | ) |
| | ) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| | ) |
| INDIANA UNIVERSITY | ) |
| HEALTH CARE ASSOCIATES, INC., | ) |
| | ) |
| | ) |
| DEFENDANT. | ) |

## <u>E-FILING APPEARANCE BY ATTORNEY IN CIVIL CASE</u>

1. This Appearance is being filed on behalf of Plaintiffs, Dr. Brian Leon and Mrs. Deborah Leon. The undersigned attorney, George W. Pendygraft, Esq., now appears in this case for the Plaintiffs. The address, telephone number and e-mail address provided for the Plaintiffs is: c/o George W. Pendygraft, GEORGE W. PENDYGRAFT, P.C., 6770 Spirit Lake Drive, Bldg. #1, Suite 201, Indianapolis, Indiana 46220; tel. no.: 317 590-3398; and e-mail: ecolawyer@aol.com.

2. The attorney information for service as required by Trial Rule 5(B)(2) is as follows:

    George W. Pendygraft, Attorney No. 5679-49
    6770 Spirit Lake Drive, Suite 201
    Indianapolis, Indiana 46220
    Tel. No.: 317 590-3398
    E-mail address: ecolawyer@aol.com.

    The undersigned (a) certifies that the contact information listed for him on the Indiana Supreme Court Roll of Attorneys is current and accurate as of the date of this Appearance; (b) acknowledges that all orders, opinions, and notices from the court in this matter that are served under Trial Rule 86(G) will be sent to the attorney at the

1

email address(es) specified by the attorney on the Roll of Attorneys regardless of the contact information listed above for the attorney; and understands that he is solely responsible for keeping his Roll of Attorneys contact information current and accurate.  See Ind. Admis. Disc. R. 2(A).

3.      This is a miscellaneous (MI) civil case type as defined in administrative Rule 8(B)(3).

4.      The undersigned, on behalf of Plaintiffs, will accept service at the e-mail address noted above.  However, the undersigned will <u>not</u> accept service by facsimile.

5.      This case does <u>not</u> involve child support issues.

6.      This case does <u>not</u> involve a protection from abuse order, a workplace restraining order or a no-contact order.

7.      This case does <u>not</u> involve a petition for involuntary commitment.

8.      The petitioning party is <u>not</u> aware of any related case.

9.      The petitioning party is <u>not</u> aware of any additional information required by local rule.

10.     The petitioning party is <u>not</u> aware of any other party member.

11.     This Appearance has been served on the attorney for Defendant, Ms. Sarah Bowers, as set forth in the Certificate of Service.

GEORGE W. PENDYGRAFT, PC


*/s/George W. Pendygraft*
George W. Pendygraft
Attorney No. 5679-49
Attorney for Plaintiffs

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on April 24, 2022, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Ms. Sarah Bowers,
Attorney No. 31232-49
Associate General Counsel
IU Health, Inc.

2

340 W. 10th Street
Indianapolis, Indiana 46202
Phone: (317) 459-9164
Email Address: sbowers6@iuhealth.org

_/s/ George W. Pendygraft_
George W. Pendygraft,
Atty. No. 5679-49