**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| **BRIAN LEON, M.D., FACP** | ) | |
| **AND  DEBORAH LEON,** | ) | |
| **HUSBAND AND WIFE,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **CASE NO. 1:22-cv-00937-JRS-MG** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **INDIANA UNIVERSITY** | ) | |
| **HEALTH CARE** | ) | |
| **ASSOCIATES, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**<u>DEFENDANT'S BRIEF IN SUPPORT OF PARTIAL MOTION TO DISMISS</u>**

TABLE OF CONTENTS

I.      INTRODUCTION ....................................................................................... 1

II.     SUMMARY OF RELEVANT ALLEGATIONS ...................................... 2

III.    LEGAL STANDARD .............................................................................. 7

    A.  Rule 12(b)(1) – Lack of Subject-Matter Jurisdiction ......................... 7

    B.  Rule 12(b)(6) – Failure to State a Claim or Plead with Requisite Specificity ... 7

IV.     ARGUMENT ........................................................................................... 8

    A.  Counts IV, VIII, IX, X, XII, and XIV – The Court Lacks Subject Matter Jurisdiction Over All Claims Asserted on Behalf of Dr. Leon's Patients Pursuant to Rule 12(b)(1) ............................................................................................. 8

    B.  Count II – Agency Relationship Claim Fails Pursuant to Rule 12(b)(6) ......... 11

    C.  Count III – Indiana Wage Payment Statute Claim Fails Pursuant to Rule 12(b)(1) and Rule 12(b)(6) ........................................................................... 13

    D.  Count IV – Fraudulent Misrepresentation Claim Fails Pursuant to Rule 9(b), Rule 12(b)(1), and Rule 12(b)(6) ............................................................... 16

        1.  The Complaint does not satisfy Rule 9(b). ................................ 17

        2.  An alleged breach of contract cannot be converted into a fraud claim ........ 18

        3.  An alleged misrepresentation must be based on material facts, not opinion. 20

    E.  Count V – Unjust Enrichment Claim Fails Pursuant to Rule 12(b)(6) .......... 20

    F.  Count VI – Interference Claim with Dr. Leon's IUSOM Relationship Fails Pursuant to Rule 12(b)(6) .......................................................................... 22

    G.  Count VII – Interference with Dr. Leon's University Membership Claim Fails Pursuant to Rule 12(b)(6) .......................................................................... 24

    H.  Count VIII – Interference with Patients' Contracts Claim Fails Pursuant to Rule 12(b)(1) and Rule 12(b)(6) ............................................................... 26

    I.  Count IX – Infliction of Emotional Distress ("IIED") Claims Fail Pursuant to Rule 12(b)(1) and Rule 12(b)(6) ............................................................... 27

    J.  Count XI – Third-Party Beneficiary Claim on Behalf of Dr. Leon Fails Pursuant to Rule 12(b)(6) .......................................................................... 33

    K.  Count XII – Crime Victim Statute Claims Fail Pursuant to Rule 12(b)(6) ..... 34

    L.  Count XIII – Defamation Claim Fails Pursuant to Rule 12(b)(6) .................. 35

M.  Count XIV – Invasion of Right of Privacy Claims Fail Pursuant to Rule 12(b)(1) and Rule 12(b)(6) ................................................................................... 38

N.  Counts XV and XVII – Intimidation, Harassment, Retaliatory Discharge, and Constitutional Claims Fail Pursuant to Rule 12(b)(6) ........................................... 38

O.  Count XVI – Loss of Consortium Claims Fail Pursuant to Rule 12(b)(6) ....... 44

P.  Count XVIII – Restraint of Trade Claim Fails Pursuant to Rule 12(b)(1) and Rule 12(b)(6) ................................................................................... 44

V.     CONCLUSION ................................................................................... 46

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Ackerman v. N.W. Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999) .................. 17

*Ali v. All. Home Health Care, LLC*, 53 N.E.3d 420, 428 (Ind. Ct. App. 2016)........... 36

*American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)...................... 40, 41

*Apex Digital, Inc. v. Sears, Roebuck & Co.,* 572 F.3d 440,
    443-44 (7th Cir. 2009) ...................................................... 7, 11, 16, 26, 28

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).................................................... 8

*Babchuk v. Indiana Univ. Health, Inc.*, 809 F.3d 966 (7th Cir. 2016) .................... 41

*Ballantine v. Amazon.com.indc LLC,* No. 1:18-CV-02546-JPH-MJD, 2019 WL
    2453153 (S.D. Ind. Mar. 14, 2019)......................................................... 36

*Blanck v. Ind. Dep't of Corr.*, 829 N.E.2d 505, 511 (Ind. 2005).................................. 44

*Board of Regents v. Roth*, 92 S. Ct. 2701 (1972) ........................................... 43

*Bowman v. Int'l Bus. Machs. Corp.*, 853 F. Supp. 2d 766, 769 (S.D. Ind. 2012) ....... 34

*Brazauskas v. Fort Wayne–South Bend Diocese, Inc.*, 796 N.E.2d 286,
    291 (Ind. 2003), *cert. denied*, 541 U.S. 902, 124 S.Ct. 1602,
    158 L.Ed.2d 244 (2004) ............................................................... 23

*Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) ............. 17

*Cantrell v. Morris*, 849 N.E.2d 488, 492 (Ind. 2006) ....................................... 43

*Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*
    474 F.3d 463, 466 (7th Cir. 2007) ...................................................... 8

*Collier v. Batiste*, 2005 WL 3543824, at *7 (E.D. La. Oct. 21, 2005) ........................ 13

*CoMentis, Inc. v. Purdue Rsch. Found.*, 765 F. Supp. 2d 1092,
    1102 (N.D. Ind. 2011) ............................................................. 21, 22

*Cullison v. Medley*, 570 N.E.2d 27 (Ind. 1991) ............................................... 28

*Davidson v. Perron*, 716 N.E.2d 29, 37 (Ind. Ct. App. 1999), *trans. denied* .. 35, 37, 28

*Davis v. Union National Bank*, 46 F.3d 24, 25 (7th Cir. 1994).................................. 41

*Dean v. Kruse Found., Inc. v. Gates*, 932 N.E.2d 763, 768 (Ind. Ct. App. 2010) ... 5, 18

*Deich-Keibler v. Bank One*, 243 F. App'x 164, 169 (7th Cir. 2007) ........................... 45

*DiMizio v. Romo*, 756 N.E.2d 1018, 1025 (Ind. Ct. App. 2001)................................. 22

*Draghi v. Cnty. of Cook*, 184 F.3d 689, 692 (7th Cir. 1999) .............................. 42

*Farr v. St. Francis Hosp. & Health Ctrs.*, No. 1:06-cv-779-SEB-JMS,
    2007 WL 2793396, at *3 (S.D. Ind. Sept. 26, 2007) ..................................... 35, 36

*Flannery v. Recording Indus. Ass'n of Am.,* 354 F.3d 632, 638 (7th Cir. 2004............ 8

*Garcetti v. Ceballos*, 547 U.S. 410, 421, 126 S. Ct. 1951, 1960,
    164 L. Ed. 2d 689 (2006) ............................................................. 42

*Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980) ........... 40

*Hedden v. CBS Corp.*, 2015 WL 5775570, at *17 (S.D. Ind. Sept. 30, 2015)............ 44

*Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) .......................................... 8

*Hollingsworth v. Perry*, 570 U.S. 693, 710, 133 S.Ct. 2652,
    186 L.Ed.2d 768 (2013) ............................................................. 9

*Hollis v. Def. Sec. Co.*, 941 N.E.2d 536, 540 (Ind. Ct. App. 2011) .............................. 15

iv

*Hope, Inc. v. DuPage Cnty., Ill.,* 738 F.2d 797, 804 (7th Cir. 1984) ............................ 7

*Indianapolis Life Insurance Company v. Hentz,* 2009 WL 36454,
   at *4 (M.D. Pa. Jan. 6, 2009) ............................................................................ 12

*Jackson v. Metro. Edison Co.,* 419 U.S. 345, 351, 95 S.Ct. 449, 453,
   42 L.Ed.2d 477 (1974) ...................................................................................... 41

*JPMCC 2006–CIBC14 Eads Parkway, LLC v. DBL Axel, LLC,*
   977 N.E.2d 354, 364 (Ind. Ct. App. 2012)................................................... 18, 20

*Knight & Jillson Co. v. Miller*, 172 Ind. 27, 87 N.E. 823, 827–28 (1909) ................. 45

*Leung v. Haines*, No. 105-CV-1826-SEB-JMS, 2007 WL 1650142, at *4 (S.D.
   Ind. June 1, 2007)............................................................................................. 18

*Lindsey v. DeGroot,* 898 N.E.2d 1251, 1264–1265 (Ind. Ct. App. 2009) ............. 29, 30

*Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560-61,
   12 S.Ct. 2130, 119 L.Ed. 2d 351 (1992) .............................................................. 7

*Oil Supply Co., Inc. v. Hires Parts Service, Inc.,* 726 N.E.2d 246,
   249 (Ind. 2000) ............................................................................................ 11, 12

*Maung NG We & Massive Atlantic Ltd. v. Merrill Lynch & Co., Inc.,*
   2000 WL 1159835, at *5 (S.D. N.Y. Aug. 15, 2000) ........................................... 13

*Moranski v. General Motors Corp.,* 433 F.3d 537, 539 (7th Cir. 2005)........................ 8

*Neely v. Facility Concepts, Inc.,* 274 F. Supp. 3d 851,
   856 (S.D. Ind. 2017), *amended in part,* No. 1:16-CV-03110-JMS-MJD, 2017 WL
   2378283 (S.D. Ind. June 1, 2017)....................................................................... 14

*Olaf v. Christie Clinic Ass'n,* 200 Ill. App. 3d 191, 195, 558 N.E.2d 610,
   613–14 (1990) ................................................................................................... 26

*Pathfinder Management, Inc. v. Mayne Pharma PTY,* 2008 WL 3192563,
   at *7 (D.N.J. Aug. 5, 2008) ............................................................................... 12

*Perry v. Hartz Mountain Corp.,* 537 F. Supp. 1387, 115 L.R.R.M. (BNA) 4934,
   64 A.L.R. Fed. 816 (S.D. Ind. 1982) ................................................................... 45

*Raines v. Byrd,* 521 U.S. 811, 818, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997).............. 7

*Reel v. Clarian Health Partners, Inc.,* 917 N.E.2d 714, 722 (Ind. Ct. App. 2009) ..... 15

*Robinson v. RIH Acquisitions,* No. 2:06-CV-413, 2007 WL 2286109,
   at *3 (N.D. Ind. Aug. 6, 2007) .......................................................................... 41

*Sharkey v. Cochran,* No. 1:09-CV-0517-JMS-DKL, 2012 WL 967057,
   at *10 (S.D. Ind. Mar. 21, 2012)....................................................................... 39

*Sherman v. Community Consolidated School District 21 of Wheeling Township,*
   980 F.2d 427, 441 (7th Cir. 1992) ...................................................................... 10

*Singleton v. Wulff,* 428 U.S. 106, 114, 96 S. Ct. 2868, 2874,
   49 L. Ed. 2d 826 (1976) ....................................................................................... 9

*Skinner v. Metro. Life Ins. Co.,* 829 F. Supp. 2d 669, 685-87 (N.D. Ind. 2010) ........ 29

*Smith v. Indiana Department of Correction, et al.,* 871 N.E.2d 975,
   985-86 (Ind. Ct. App. 2007).............................................................................. 43

*SMC Corporation v. Peoplesoft USA, Inc.,* 2004 WL 828226,
   *3 (S.D. Ind. 2004)................................................................................ 16, 19, 20

*Taake v. Cnty. Of Monroe*, 530 F.3d 538, 542 (7th Cir. 2008).................................... 42

*Town of W. Terre Haute, Indiana v. Roach,* 52 N.E.3d 4,

10 (Ind. Ct. App. 2016) .................................................................................. 35

*Trail v. Boys & Girls Clubs of Nw. Indiana*, 845 N.E.2d 130, 138 (Ind. 2006) .... 23-25

*Tucker v. Roman Cath. Diocese of Lafayette-In-Indiana*, 837 N.E.2d 596,
603 (Ind. Ct. App. 2005) ............................................................................. 29

*Tunca v. Lutheran Gen. Hosp.*, 844 F.2d 411, 414 (7th Cir. 1988) ........................... 42

*United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*,
517 U.S. 544, 546, 116 S.Ct. 1529, 134 L.Ed.2d 758 (1996) ................................... 10

*Utility Audit, Inc., v. Horace Mann Serv. Corp.*, 383 F.3d 683,
689 (7th Cir. 2004) ..................................................................................... 21

*Walczak v. Lab. Works-Ft. Wayne LLC*, 983 N.E.2d 1146, 1153 (Ind. 2013) ........... 21

*Whitmore v. Arkansas*, 495 U.S. 149, 162, 110 S.Ct. 1717,
109 L.Ed.2d 135 (1990) ................................................................................ 10

*Williams v. Banning*, 72 F.3d 552, 553 (7th Cir. 1995) ........................................... 8

*Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228, 1235 (Ind. 1994) ........ 24-25, 27

*Young v. Harbor Mortor Works, Inc.*, No. 2:07-CV-0031-JVB,
2009 WL 187793, at *9 (N.D. Ind. Jan. 27, 2009) ................................................ 12

*Woodbury v. McKinnon*, 447 F.2d 839, 842 (5th Cir. 1971) ....................................... 43


Statutes

Ind. Code §22-2-5-1(b) .................................................................................. 14

Ind. Code §22-2-5-2 ....................................................................................... 14

Ind. Code §22-2-9-2(a) ................................................................................... 15

Ind. Code §22-2-9-4 ....................................................................................... 15

Ind. Code §24-1-2-5 (1976 Ed.) ....................................................................... 45

Ind. Code §35-43-5-3 ..................................................................................... 35

42 U.S.C. § 1983 ............................................................................................ 40


Rules

Fed. R. Civ. P. 9(b) ........................................................................................ 17

Fed. R. Civ. P. 12(b)(1) .............................................................. 16, 26, 28, 33, 45, 46

Fed. R. Civ. P. 12(b)(1), (6) .......................................................................... 14, 45

Fed. R. Civ. P. 12(b)(6) ........................................ 11-13, 26, 28, 33, 35, 38-39, 44-45

Fed. R. Civ. P. 17(a) ...................................................................................... 10


Other Authorities

Indiana Constitution, Article I, Section 9 ............................................................ 42

Indiana Constitution, Article I, Section 12 .......................................................... 42

Indiana Constitution, Article I, Section 23 .......................................................... 42

Indiana Constitution, Article I, Section 23 .......................................................... 42

First Amendment of U.S. Constitution .......................................................... 39, 41, 42

Fifth Amendment of U.S. Constitution ............................................................. 39, 41

Thirteenth Amendment of U.S. Constitution ......................................................... 39

Fourteenth Amendment of U.S. Constitution ..................................................... 39, 42

## I.      INTRODUCTION

Defendant, Indiana University Health Care Associates, Inc. ("IUHCA") d/b/a IU Health Physicians ("IUHP")[1], asks the Court to dismiss many of the Counts asserted in the Complaint filed by Plaintiffs, Brian Leon, M.D., FACP ("Dr. Leon") and Deborah Leon ("Deborah"), husband and wife (collectively, "Plaintiffs").

At a high-level, Dr. Leon is upset that IUHP did not renew his employment contract, which resulted in his separation of employment from IUHP effective April 1, 2021. He alleges that IUHP breached the employment contract in certain ways, and he alleges that IUHP decided not to renew his contract because of his age or because of his use of FMLA.

Dr. Leon's fifty-three-page Complaint somehow manages to turn a straightforward, contractually permitted separation of employment into a Nineteen Count Complaint, alleging wide-ranging and inapplicable claims on behalf of himself, his wife, and his patients. Dr. Leon's over-zealous pleading unfortunately requires IUHP and the Court to cull through his numerous "counts" to weed out the many non-actionable claims and determine what remains to allow for an orderly resolution of this lawsuit on the merits.

IUHP submits this Brief in Support of its Partial Motion to Dismiss, asking the Court to dismiss the following Counts pursuant to **Federal Rule of Civil Procedure 12(b)(1)**: all claims asserted on behalf of Dr. Leon's patients; Count III; Count IV; Count VIII; Count IX; Count X; Count XIV; and Count XVIII. Further,

---

[1] Defendant is referenced as "IUHP" throughout this Brief.

IUHP asks the Court to dismiss the following Counts pursuant to **Federal Rule of Civil Procedure 12(b)(6)**: Count II; Count IV; Count V; Count VI; Count VII; Count VIII; Count IX; Count XI; Count XII; Count XIII; Count XIV; Count XV; Count XVI; Count XVII; and Count XVIII. IUHP does not move to dismiss Count I or Count XIX (although IUHP denies liability and damages for Counts I and Count XIX, as well as all other Counts).

## II.    SUMMARY OF RELEVANT ALLEGATIONS

The Complaint's allegations are denied in all material respects and are only assumed true for purposes of IUHP's Motion to Dismiss. For purposes of IUHP's Partial Motion to Dismiss only, the Complaint alleges the following facts:

IUHCA is an Indiana not-for-profit corporation and has as members IU Health, Inc. ("IU Health") and Indiana University, holding 51 (Class B) and 49 (Class A) membership units, respectively. (Dkt. 1-1 at PageID # 10 (¶ 6)). IUHP filed certificates for the assumed business names of "IU Medical Group-Specialty Group" on June 26, 1997, "The Indiana Clinic" on February 23, 2009, and "Indiana University Health Physicians," "IU Health Physicians" and "IUHP" on October 22, 2010, and that these are individually and collectively the same legal entity named as Defendant in this Complaint. (Dkt. 1-1 at PageID # 10 (¶ 7)).

Dr. Leon has been board certified in internal medicine since 1995. (Dkt. 1-1 at PageID # 10 (¶ 3)). After Dr. Leon completed his residency in internal medicine in 1997, Dr. Leon entered into a relationship with IUHP, and he concurrently accepted a faculty appointment to Indiana University School of Medicine ("IUSOM"), where he

taught medicine. (Dkt. 1-1 at PageID # 10 (¶ 4)). Until April 1, 2021, Dr. Leon practiced medicine at IUHP's University Primary Care Facility ("UF"). (Dkt. 1-1 at PageID # 10 (¶ 5)).

Prior to April 1, 2012, Dr. Leon's relationship with IUHP was not reduced to writing, and "customs and practices were in place and followed during the nearly fifteen-year relationship between [IUHP] and Dr. Leon." (Dkt. 1-1 at PageID # 10 (¶¶ 8-9)). On April 1, 2012, IUHP and Dr. Leon entered into a contract ("4/1/2012 Contract") (See Dkt. 1-1 at PageID # 11 (¶ 10); Dkt. 5 (4/1/2/012 Contact, which was attached to the Complaint, filed by Defendant under seal)). The Complaint alleges that IUHP represented he would be appointed an IUSOM faculty member, he could provide care to his patients expending such time as reasonable and necessary to provide the highest quality care, his schedule for work at IUSOM and IUHP would be established jointly by the Practice Leaders, and the Practice Leaders jointly would decide if there were cause for nonrenewal of his 4/1/2012 Contract. (Dkt. 1-1 at PageID # 25 (¶ 95)).

Beginning in April 2013 and lasting until August 1, 2018, Dr. Leon held the IUHP-PC leadership position of "University Site Medical Director." (Dkt. 1-1 at PageID # 13 (¶ 26)). By 2018, IUHP-PC leadership over Site Directors like Dr. Leon included Dr. Kevin B. Gebke ("Dr. Gebke") and IUHP's Vice President of Primary Care, Celia Surface-Bruder ("VP Surface-Bruder"). (Dkt. 1-1 at PageID # 13 (¶ 29)). On July 31, 2018, Surface-Bruder and Dr. Gebke met with Dr. Leon and asked him to assume the responsibility of Regional Medical Director ("RMD") for IUHP-PC's South Central

Region ("SCR"). (Dkt. 1-1 at PageID # 15 (¶ 41)). While RMD of SCR, Dr. Leon managed more than forty physicians and supporting staff at seven IUHP-PC facilities, served as the UF Local Leader, and practiced internal medicine at UF. (Dkt. 1-1 at PageID # 15 (¶ 41)).

On April 4, 2020, Dr. Gebke relieved Dr. Leon from his IUHP managerial positions of RMD of SCR and UF Local Leader and his IUHP committee assignments. (Dkt. 1-1 at PageID # 20 (¶ 67)). After, Dr. Gebke hired a candidate for the new IUHP-PC position of director of culture and communication who was his friend and the manager of the IUHP-PC facility where he practiced family medicine. (Dkt. 1-1 at PageID # 16 (¶ 50)).

IUHP-PC leadership had a continual effort to reduce the minutes of Electronic Medical Record ("EMR") time that an IUHP-PC physician expended per patient. (Dkt. 1-1 at PageID # 17 (¶ 52)). In 2020, IUHP-PC leadership set the EMR time goal at ten minutes per patient per visit. (Dkt. 1-1 at PageID # 17 (¶ 53)). Dr. Leon expressed his judgment that an EMR time per patient per visit of ten minutes was inadequate and inappropriate and in contravention of IUHP's Directives. (Dkt. 1-1 at PageID # 17 (¶ 54)). IUHP-PC leadership directed Dr. Leon to "keep his mouth closed," "sit on his hands," keep his ideas to himself and do what he was told to do. (Dkt. 1-1 at PageID # 18 (¶ 57)).

IUHP-PC dismissed or ignored Dr. Leon's input on IUHP-PC staffing, allowed persons under his leadership to circumvent him and communicate directly with them, dismissively made Dr. Leon stand in a hallway and be viewed by his peers while

4

IUHP-PC leadership discussed him, and evaluated his leadership based solely on second-hand and tainted comments of staff instead of information gained directly from Dr. Leon and the physicians, managers, nurses and medical staff interacting with him and his patients. (Dkt. 1-1 at PageID # 18 (¶ 59)). During a meeting of IUHP-PC's RMDs, Dr. Gebke stated a desire to terminate eight physicians because they were taking up too much of his time. (Dkt. 1-1 at PageID # 19 (¶ 65)). Dr. Gebke opposed Dr. Leon's speaking about the challenges facing IUHP-PC and the changes necessary to meet those challenges, refused to consider Dr. Leon's Covid-19 projects, and had IUHP management direct Dr. Leon to be silent and listen, even when attending meetings that he called and was leading. (Dkt. 1-1 at PageID # 20 (¶ 66)).

After delivery of the letter ("10/1/2020 Nonrenewal Letter") on October 1, 2020 purporting not to renew the 4/1/2012 Contract, Dr. Gebke threatened to bring a retaliatory "for cause" termination against Dr. Leon if he employed legal counsel and enforced his rights under the 4/1/2012 Contract. (Dkt. 1-1 at PageID # 20-21 (¶ 70)). The 10/1/2020 Nonrenewal Letter was not signed by an authorized IUHP officer and admitted Dr. Leon was "capably" rendering his services under the 4/1/2012 Contract. (Dkt. 1-1 PageID # 21-22 (¶¶ 103, 105)). Dr. Leon never received notice of a written grievance made against him in connection with any of his services rendered to or in connection with IUHP over a period of more than twenty-three years. (Dkt. 1-1 at PageID # 21 (¶ 74)).

On or before October 1, 2020, no IUHP representative notified IUSOM's academic chief, the Chairman of the IUSOM Internal Medicine Department or IUSOM's Dean

of Academic Affairs that it would not pay Dr. Leon for his services as Associate Professor of Clinical Medicine after March 31, 2021, and/or discussed with an IUSOM representative any change in Dr. Leon's work assignments as Associate Professor of Clinical Medicine for the 2021 IUSOM academic year and forward. (Dkt. 1-1 at PageID # 24 (¶ 90)).

IUHP-PC drafted a letter to be sent to Dr. Leon's patients under his signature that Dr. Leon rejected unless changes were made to it. (Dkt. 1-1 at PageID # 30 (¶ 117)). IUHP-PC did not make all the changes demanded by Dr. Leon before it sent the letter out to his patients. (Dkt. 1-1 at PageID #30 (¶ 118)). The letter ("2/1/2021 Letter") IUHP sent to Dr. Leon's patients on February 1, 2021 endorsed physicians at IUHP-PC as "highly skilled" when Dr. Leon specifically had informed IUHP that a letter with such language was not acceptable. (Dkt. 1-1 at PageID # 30 (¶ 119)).

Dr. Leon's wife, Deborah Leon suffered a major stroke in September 2020 that required and will require medical treatment and assistance for the rest of her life. (Dkt. 1-1 at PageID # 28-29 (¶ 108)). In September 2020, Dr. Leon took family leave to be home with his wife. (Dkt. 1-1 at PageID # 29 (¶ 109)). Dr. Leon suffered an aggravation of the arthritis and spinal stenosis in his neck resulting from the neck tension deviating the spine in his neck, impinging upon his spinal nerve root and causing terrible pain and its radiation into his left arm that required treatment. (Dkt. 1-1 at PageID # 29 (¶ 112)).

## III.   LEGAL STANDARD

### A.  <u>Rule 12(b)(1) – Lack of Subject-Matter Jurisdiction</u>

Federal Rule of Civil Procedure 12(b)(1) allows a party to move to dismiss a claim if the Court lacks subject-matter jurisdiction. Article III of the United States Constitution limits the federal courts' subject-matter jurisdiction to "actual cases or controversies." *Raines v. Byrd*, 521 U.S. 811, 818, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997) (citation and internal quotations omitted). It is well-settled that "standing is an essential component of Article III's case-or-controversy requirement." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443-44 (7th Cir. 2009) (citation omitted).

At the pleading stage, standing requires allegations of a concrete and particularized injury in fact that is traceable to the defendant's conduct and redressable by judicial relief. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). "If a plaintiff fails to meet the minimum constitutional requirements for standing . . . the district court must dismiss the action for failure of subject matter jurisdiction." *Hope, Inc. v. DuPage Cnty., Ill.*, 738 F.2d 797, 804 (7th Cir. 1984).

### B.  <u>Rule 12(b)(6) – Failure to State a Claim or Plead with Requisite Specificity</u>

Federal Rule of Civil Procedure 12(b)(6) provides that a party may move to dismiss an action for failure to state a claim on which relief can be granted. When considering a motion under Rule 12(b)(6), the Court must accept as true the facts alleged in the

Complaint. *Williams v. Banning*, 72 F.3d 552, 553 (7th Cir. 1995). "[W]hen a document contradicts a complaint to which it is attached, the document's facts or allegations trump those in the complaint." *Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 (7th Cir. 2004); *see also Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463, 466 (7th Cir. 2007) (concluding that the district court properly relied upon contracts attached to the complaint even when the contracts contradicted the complaint).

"[T]he dismissal of a complaint for failure to state a claim is proper if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Moranski v. General Motors Corp.*, 433 F.3d 537, 539 (7th Cir. 2005) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court is not required to accept as true, any legal conclusions or conclusory allegations that are unwarranted by the pleaded facts. *See id.* at 664.

## IV.    ARGUMENT

**A.  <u>Counts IV, VIII, IX, X, XII, and XIV – The Court Lacks Subject Matter Jurisdiction Over All Claims Asserted on Behalf of Dr. Leon's Patients Pursuant to Rule 12(b)(1)</u>**

The Complaint asserts several Counts where "Dr. Leon claims injury for his patients[.]" (*See* Counts IV, VIII, IX, X, XII, and XIV). All such claims must be

dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of standing and therefore lack of subject-matter jurisdiction.

Count IV is a claim for fraudulent misrepresentation which in part claims that Dr. Leon's patients suffered injury when they were assigned to/induced to obtain their care from other IUHP-PC physicians. (Dkt. 1-1 at PageID # 96–97 (¶¶ 142-143)). Count VIII is a claim for tortious interference with Dr. Leon-patient contracts. (Dkt. 1-1 at PageID # 103-105 (¶¶ 172-175)). Count IX is a claim for intentional infliction of emotional distress in part on Dr. Leon's patients. (Dkt. 1-1 at PageID # 105-107 (¶¶ 176-180)). Count X is a third-party beneficiary claim on behalf of Dr. Leon's patients. ((Dkt. 1-1 at PageID # 109-110 (¶¶ 181-185)). Count XII is a claim brought under the Crime Victim Statute. (Dkt. 1-1 at PageID # 109-110 (¶¶ 189-196)). Count XIV is a claim for invasion of privacy in part for allegedly not obtaining the consent of Dr. Leon's patients before disclosing their medical records to other physicians. (Dkt. 1-1 at PageID # 113-114 (¶¶ 206-209)).

The general rule is that plaintiffs must allege their **own** injuries to establish standing. *See Hollingsworth v. Perry*, 570 U.S. 693, 710, 133 S.Ct. 2652, 186 L.Ed.2d 768 (2013) ("mere authorization to represent a third party's interests" will not confer standing to a party with no injuries of her own). "[T]hird parties themselves usually will be the best proponents of their own rights." *Singleton v. Wulff*, 428 U.S. 106, 114, 96 S. Ct. 2868, 2874, 49 L. Ed. 2d 826 (1976).

Dr. Leon's alleged claims on behalf of his patients do not fit into any of the potential exceptions that may allow a plaintiff to bring a claim on behalf of another,

either. For example, he is not a legal guardian or "next friend" of any patient.[2]  *See* Fed. R. Civ. P. 17(a) (allowing guardians and similar representatives to bring claims on behalf of others). This case is also clearly distinguishable from *Singleton*, where the United States Supreme Court "conclude[d] that it generally is appropriate to allow a physician to assert the rights of women patients as against governmental interference with the abortion decision[.]" *Id*. at 118. The *Singleton* Court decided a litigant has general prudential standing to assert a legal right of a third-party if (1) the third-party's "enjoyment of the right is inextricably bound up with the activity the litigant wishes to pursue," *e.g.*, the litigant is "fully, or very nearly, as effective a proponent of the right as the" third-party, and (2) there is "some genuine obstacle to" the third-party's ability to assert its own right. *Id*. at 114-16. Here, the Dr. Leon's former patients do not have rights that are "inextricably bound up" with any of the allegations in Count IV, VIII, IX, X, XII, or XIV. Even they did have such rights, Dr. Leon's former patients have the ability to try to enforce those rights themselves, and there are no obstacles for them to do so.

Simply put, Dr. Leon cannot sue IUHP on behalf of his patients. Because Dr. Leon does not have standing to bring a claim on behalf of his patients, the Court lacks

---

[2] For example, guardians have standing when they sue on behalf of minors. *E.g.*, *Sherman v. Community Consolidated School District 21 of Wheeling Township*, 980 F.2d 437, 441 (7th Cir. 1992). A "next friend" may have standing to bring a habeas corpus petition if she has a "significant relationship" with the real party in interest and the real party in interest is somehow disabled. *See Whitmore v. Arkansas*, 495 U.S. 149, 162, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990). A similar next-friend doctrine allows third parties to sue on behalf of minors and incompetent persons. *See* Fed. R. Civ. P. 17(c). An association can also have standing to sue on behalf of its members. *United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 546, 116 S.Ct. 1529, 134 L.Ed.2d 758 (1996).

subject-matter jurisdiction over the claims asserted on behalf of Dr. Leon's patients in Counts IV, VIII, IX, X, XII, and XIV, and these claims must be dismissed.

**B.  <u>Count II – Agency Relationship Claim Fails Pursuant to Rule 12(b)(6)</u>**

In Count II, Dr. Leon alleges that IUHP was his agent and breached certain duties owed to Dr. Leon as principal, including dealing fairly with him, acting in good faith toward him, and avoiding any position where its own interests were potentially antagonistic to Dr. Leon's interests. (Dkt. 1-1 at PageID # 35 (¶¶ 133-136)). Count II must be dismissed because the Complaint does not plead facts that establish a principal-agent relationship and therefore fails to state a claim. Fed. R. Civ. P. 12(b)(6).

To establish an agency relationship, three elements must be shown: (1) a manifestation of consent by the principal to the agent, (2) an acceptance of the authority by the agent, and (3) control exerted by the principal over the agent. *Oil Supply Co., Inc. v. Hires Parts Service, Inc.*, 726 N.E.2d 246, 249 (Ind. 2000).

Here, the Complaint fails to plead facts that establish any agency relationship running from Dr. Leon as principal to IUHP as agent. The Complaint only states the legal conclusions that "[r]egarding the services provided under the 4/1/2012 Contract, IUHP was the agent for Dr. Leon who was the principal," (Dkt. 1-1 at PageID # 13 (¶ 24)), and that "an agency relationship existed between IUHP and Dr. Leon with IUHP as the agent and Dr. Leon as the principal, that: (a) IUHP would provide administrative services for Dr. Leon and non-physician medical services for his

11

patients as he directed, and (b) he would provide physician services for his patients." (Dkt. 1-1 at PageID # 35 (¶ 134)).

The Complaint does not allege facts that sufficiently plead Dr. Leon manifested consent to IUHP, that IUHP consented to an agency relationship, that IUHP accepted the authority of Dr. Leon, or that Dr. Leon exerted control over IUHP. *See Oil Supply Co., Inc.,* 726 N.E.2d at 249. The Complaint's pleaded facts do not support the conclusory allegation that IUHP acted on behalf of Dr. Leon and was subject to Dr. Leon's control. Therefore, the Complaint does not plead facts that establish an agency relationship. *See Young v. Harbor Mortor Works, Inc.*, No. 2:07-CV-0031-JVB, 2009 WL 187793, at *9 (N.D. Ind. Jan. 27, 2009) (applying Indiana law, the Court dismisses Plaintiff's argument that that agency relationship existed, stating, "[Plaintiff] cannot survive dismissal by baldly asserting in his Response Brief an agency relationship … without alleging any facts in support of the relationship.").

Courts across the country have held that conclusory allegations of agency identical to those in Plaintiffs' Complaint cannot withstand a motion to dismiss. *See, e.g., Indianapolis Life Insurance Company v. Hentz,* 2009 WL 36454, at *4 (M.D. Pa. Jan. 6, 2009) (rejecting allegations that "AmerUs Life operated as agent for Indianapolis in the marketing, sale, and service of premium financed life insurance policies,"' reasoning that "[t]he allegations in this paragraph amount to nothing more than labels and conclusions, and no other allegations . . . . offer further support for the existence of an agency relationship between these two entities."); *Pathfinder Management, Inc. v. Mayne Pharma PTY*, 2008 WL 3192563, at *7 (D.N.J. Aug. 5,

2008) (rejecting agency allegations when "allegation of agency is . . . merely conclusory"); *Maung NG We & Massive Atlantic Ltd. v. Merrill Lynch & Co., Inc.*, 2000 WL 1159835, at *5 (S.D. N.Y. Aug. 15, 2000) ("plaintiffs' conclusory statements that MLIB and Teoh and Elias were 'agents' of the MLC, MLG and/or MLIFC do not allege an agency relationship sufficient to withstand dismissal under this standard . . . . Plaintiffs must do more than state the legal conclusion that MLIB was the defendants' agent , it must plead facts that support a finding that such agency existed"); *Collier v. Batiste*, 2005 WL 3543824, at *7 (E.D. La. Oct. 21, 2005) ("To withstand Movants' 12(b)(6) motion, the intent to create a principal-agent relationship must be asserted as a matter of fact rather than as a conclusory allegation[.]").

The Complaint only offers conclusory statements that an agency relationship existed as Dr. Leon as principal and IUHP as agent, but it does not plead facts that support that an agency relationship existed. Therefore, Count II must be dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

## C. **Count III – Indiana Wage Payment Statute Claim Fails Pursuant to Rule 12(b)(1) and Rule 12(b)(6)**

Count III must be dismissed because only individuals who voluntarily left employment can bring claims under the Indiana Wage Payment Statute ("IWPS"). Dr. Leon alleges in the complaint that his employment was involuntarily terminated when IUHP non-renewed his contract. (Dkt. 1-1 at Page ID# 33 (¶ 132)). The Complaint does not allege facts to show that Dr. Leon voluntarily left his

employment. Therefore, Count III must be dismissed for failure to state a claim upon which relief can be granted and/or lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1), (6).

The Complaint alleges that IUHP owes Dr. Leon for services rendered or that would have been rendered except for IUHP's intentional wrongful conduct. He alleges that unpaid amounts are a wage and/or benefit for purposes of Ind. Code §22-2-5-2. (Dkt. 1-1 at PageID # 36 (¶ 138)). Ind. Code § 22-2-5-2 is part of the IWPS, which applies to employees who have voluntarily left employment. Ind. Code § 22-2-5-1(b). The Complaint, however, does not allege that Dr. Leon voluntarily left his employment. Rather, the Complaint alleges numerous times that Dr. Leon was "terminated" or "removed[.]" (*See, e.g.,* Dkt. 1-1 at PageID # 88, 110 (¶¶ 104, 106, 195)). Because the alleged facts do not allege or establish that Dr. Leon voluntarily left his employment, he does not have standing to bring a claim under the IWPS. *See Neely v. Facility Concepts, Inc.*, 274 F. Supp. 3d 851, 856 (S.D. Ind. 2017), *amended in part*, No. 1:16-CV-03110-JMS-MJD, 2017 WL 2378283 (S.D. Ind. June 1, 2017) (granting employer's motion to dismiss IWPS claim because the plaintiff was involuntarily terminated, the Court stated, "In order to have standing to pursue a claim under the IWPS, the claimant must  have voluntarily left his or her employment."). Also, Dr. Leon has failed to state a claim upon which relief can be granted since he is not entitled to relief under the IWPS.

Further, to the extent Dr. Leon actually purports to state a claim pursuant to the Indiana Wage Claim Act ("IWCA"), he is required to exhaust administrative remedies

with the Indiana Department of Labor ("IDOL") before pursuing a claim directly in Court, and he does not allege that he has even attempted to do so. The IWCA applies to individuals who were involuntarily terminated, *i.e.* employees that the "employer separates . . . from the pay-roll." Ind. Code § 22-2-9-2(a). Involuntarily terminated individuals pursuing claims under the IWCA must exhaust administrative remedies by initially filing a claim with the Indiana Department of Labor ("IDOL"). *See* Ind. Code § 22-2-9-4 (commissioner of labor has jurisdiction to enforce and ensure compliance with this chapter and may refer claims to the attorney general, who in turn may refer claims to private attorneys).

The failure to exhaust administrative remedies is a jurisdictional defect. *Hollis v. Def. Sec. Co.*, 941 N.E.2d 536, 540 (Ind. Ct. App. 2011) (affirming trial court's dismissal of claims for lack of subject matter jurisdiction where plaintiff did not submit IWCA claims to the IDOL); *Reel v. Clarian Health Partners, Inc.*, 917 N.E.2d 714, 722 (Ind. Ct. App. 2009) (affirming dismissal of purported wage claims of individuals who had not sought review and referral from the IDOL); *see also Walczak v. Lab. Works-Ft. Wayne LLC*, 983 N.E.2d 1146, 1153 (Ind. 2013) (observing that statutory claims under the IWCA are initially within the jurisdiction of the IDOL, so the trial court lacks subject matter jurisdiction unless administrative remedies have been exhausted).

Based on the foregoing, Count III should dismissed.

### D. <u>Count IV – Fraudulent Misrepresentation Claim Fails Pursuant to Rule 9(b), Rule 12(b)(1), and Rule 12(b)(6)</u>

Count IV must be dismissed on several grounds: (1) as previously briefed, Dr. Leon does not have standing to bring claims on behalf of his patients;[3] (2) the alleged misrepresentations are covered by the 4/1/2012 Contract; (3) the Complaint fails to plead the fraudulent misrepresentations with particularity as required by Rule 9(b); and (4) fraudulent misrepresentations must be based on material fact, not opinion.

To establish a cause of action for fraudulent misrepresentation, the plaintiff must demonstrate: (1) that the defendant made false statements of past or existing material facts; (2) that the defendant made such statements knowing them to be false or recklessly without knowledge as to their truth or falsity; (3) that the defendant made the statements to induce the plaintiff to act upon them; (4) that the plaintiff justifiably relied and acted upon the statements; and (5) that the plaintiff suffered injury. *Dickerson v. Strand*, 904 N.E.2d 711, 715 (Ind. Ct. App. 2009). "An actionable misrepresentation must be a misrepresentation of material fact; it cannot be based upon mere opinion." *SMC Corp. v. PeopleSoft U.S.A., Inc.*, No. 1:00-CV-1095-LJM-VSS, 2004 WL 828226, at *2 (S.D. Ind. Mar. 15, 2004) (citation omitted).

---

[3] Count IV improperly asserts claims of fraudulent misrepresentation on behalf of Dr. Leon's patients. (Dkt. 1-1 at PageID # 96-97 (¶¶ 140-143)). Plaintiffs do not have standing to assert such claims on behalf of Dr. Leon's patients. *See* Part IV.A, *supra*; *Apex Digital, Inc.*, 572 F.3d at 443-44. Therefore, the claims for fraudulent misrepresentation made on behalf of Dr. Leon's patients must be dismissed for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1).

### *1.   The Complaint does not satisfy Rule 9(b).*

The Complaint does not satisfy Rule 9(b)'s heightened pleading standard for fraud claims, which requires the plaintiff to plead fraud "with particularity". Fed. R. Civ. P. 9(b). A claim of fraudulent misrepresentation is subject to the heightened pleading standards set forth in Rule 9(b), which requires a plaintiff to allege "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) (citation omitted). A plaintiff is required to plead the "who, what, where, and when of the alleged fraud" because, in doing so, they must "conduct a precomplaint investigation in sufficient depth to assure that the charge of fraud is responsible and supported, rather than defamatory and extortionate." *Ackerman v. N.W. Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999).

Count IV alleges that "IUHP is liable to Dr. Leon for fraudulent misrepresentation because to induce Dr. Leon to make and renew the 4/1/2012 Contract, IUHP knowingly made representations therein that were untrue when made, justifiably relied upon by Dr. Leon and the cause of injury to Dr. Leon."  (Dkt. 1-1 at PageID # 97 (¶ 144)). The Complaint also alleges the following:

> Understanding them to be made truthfully and for purposes of inducing him to enter the 4/1/2012 Contract and periodically renew it, Dr. Leon relied upon IUHP's representations that:  (a) separately he would be appointed an IUSOM faculty member, (b) he could provide care to his patients expending such time as reasonable and necessary to provide the highest quality care, (c) his schedule for work at IUSOM and IUHP would be established jointly by the Practice Leaders, and (d) the Practice

> Leaders jointly would decide if there were cause for nonrenewal of his
> 4/1/2012 Contract.

(Dkt. 1-1 PageID # 85 (¶ 95)).

Dr. Leon's allegations do not plead the identity of the person(s) who made the alleged misrepresentations; when the alleged misrepresentations were made; where they were made; or the means by which these alleged misrepresentations were made. Because the Complaint does not plead the alleged misrepresentations with the required particularity, the claims must be dismissed. *See Leung v. Haines*, No. 105-CV-1826-SEB-JMS, 2007 WL 1650142, at *4 (S.D. Ind. June 1, 2007) (dismissing a fraud claim in part because it fell short of the Rule 9(b) particularity requirement).

### 2. *An alleged breach of contract cannot be converted into a fraud claim.*

Count IV also fails because some of the alleged misrepresentations are duplicative of Dr. Leon's claim for breach of contract. When a plaintiff alleges both a breach of contract claim and a fraud claim, the tort of fraud must be "separate and independent" from the alleged breach of contract, and the injury sustained from the tort must be "distinct" from the injury suffered as a result of the breach of contract. *JPMCC 2006–CIBC14 Eads Parkway, LLC v. DBL Axel, LLC*, 977 N.E.2d 354, 364 (Ind. Ct. App. 2012) (citing *Dean V. Kruse Found., Inc. v. Gates*, 932 N.E.2d 763, 768 (Ind. Ct. App. 2010)).

More specifically, **point (a)** in Paragraph 95 of the Complaint—the allegation that IUHP told Dr. Leon he would be "appointed an IUSOM faculty member"— is allegedly covered by the 4/1/2012 Contract. Dr. Leon admits as much elsewhere in his Complaint, although IUHP does not agree that he accurately characterizes the

18

language of the Contract.[4]  (*See* Dkt. 1-1 PageID # 91-92 (¶ 125) ("The 4/1/2012

Contract was premised on: (a) Dr. Leon concurrently having an IUSOM faculty

position . . ."); Dkt. 1-1 at PageID # 101 (¶ 161) ("Under the 4/1/2012 Contract, Dr.

Leon was: (a) required to maintain his faculty position with IUSOM . . .")). Dr. Leon

has made clear that he believes that IUHP breached a clause of the 4/1/2012 Contact

requiring him to maintain his faculty position with IUSOM. As such, this alleged

misrepresentation is set forth in his breach of contract claim, and Dr. Leon cannot

repackage his breach of contract claim into a fraudulent misrepresentation claim. *See*

*SMC Corporation v. Peoplesoft USA, Inc.*, 2004 WL 828226, *3 (S.D. Ind. 2004)

(granting a motion to dismiss a fraudulent misrepresentation claim, the court

emphasized that "where a plaintiff has not alleged that it suffered any injury separate

from that resulting from a breach of contract, the breach does not convert into fraud").

**Point (d)** in Paragraph 95 of the Complaint—the allegation that IUHP

represented that "the Practice Leaders jointly would decide if there were cause for

nonrenewal of his 4/1/2012 Contract"—is also allegedly covered by the 4/1/2012

Contract. (*See* Dkt. 1-1 PageID # 92 (¶ 127) ("Section 1.2 of the 4/1/2012 Contract

required the Practice Leaders and Dr. Leon jointly to agree to any nonrenewal of the

4/1/2012 Contract other than for cause, and since that did not occur, the 10/1/2020

---

[4] The 4/1/2012 Contract actually only says the Dr. Leon "may" hold an affiliate faculty
appointment. (Dkt. 5 at Section 1.5(c) ("IUHP recognizes that Physician may hold an affiliate
faculty appointment from the School[.]"). Nothing in the 4/1/2012 Contract suggests that
IUHP made the faculty appointment, and the Court does not need to assume as true
allegations in the Complaint that contradict the 4/1/2012 Contract. Any IUSOM faculty
appointment was made by IUSOM, who is not a party to the 4/1/2012 Contract. (*See* Dkt. 5).
The Complaint and the 4/1/2012 Contract do not establish otherwise.

Nonrenewal Letter was ineffective and unenforceable.")). IUHP does not agree that Plaintiff's allegation accurately states the content of the 4/1/2012 Contract, but by his own pleading, he argues that the same circumstance which caused a breach of contract also constituted fraud. Again, Plaintiff cannot repackage this breach of contract claim into a fraudulent misrepresentation claim. *JPMCC 2006–CIBC14 Eads Parkway, LLC*, 977 N.E.2d at 364 ("[A] party may not restyle a breach-of-contract claim as a tort claim simply to obtain additional damages").

### 3. An alleged misrepresentation must be based on material facts, not opinion.

In addition to the above failings, **point (b)** of Paragraph 95 of the Complaint is based on opinion, which is insufficient to support a fraudulent misrepresentation claim. Point (b) alleges that IUHP represented that Dr Leon "could . . . expend[] such time as reasonable and necessary to provide the highest quality care[.]" (Dkt. 1-1 at PageID # 85 (¶ 95)). He later alleges that this representation was untrue—in other words, his fraudulent misrepresentation claim is premised, in part, on his *opinion* that he was not provided reasonable time to provide the highest quality care. But, "[w]ords like 'successful' and 'unreasonable' cannot be measured objectively," and Dr. Leon's "mere opinion[]" that IUHP failed to provide him "reasonable" time does not constitute an actionable misrepresentation. *SMC Corp.*, 2004 WL 828226, at *2-3.

Based on all the foregoing, Count IV must be dismissed.

### E.  Count V – Unjust Enrichment Claim Fails Pursuant to Rule 12(b)(6)

Count V must be dismissed because it is precluded by Count I, the breach of contract claim. "When two parties' relationship is governed by contract, they may not

bring a claim of unjust enrichment unless the claim falls outside the contract . . . . In determining whether a claim falls outside a contract, the subject matter of the contract governs [.]"  *Utility Audit, Inc., v. Horace Mann Serv. Corp.*, 383 F.3d 683, 689 (7th Cir. 2004). Courts routinely dismiss unjust enrichment claims when the claim is covered by the "same subject matter" as the alleged breach of contract. *See CoMentis, Inc. v. Purdue Rsch. Found.*, 765 F. Supp. 2d 1092, 1102 (N.D. Ind. 2011).

Here, Count V's unjust enrichment claim is precluded by Count I's breach of contract claim, which IUHP is not moving to dismiss. IUHP agrees that 4/1/2012 Contract is an enforceable contract. Count V alleges that IUHP was "unjustly enriched by the measurable benefits it received and accepted from Dr. Leon without payment including the: (a) UF Medical Director/Local Leader Services, (b) SCRMD Services, (c) COT Program Services, (d) IUHP Committees Services, (e) UF Consolidation Services, and (f) Leon Practice." (Dkt. 1-1, Count V, at PageID # 100 (¶ 157)). Count I precludes points (a) through (f) of ¶ 157 of Count V. (*See* Dkt. 1-1, Count I, at PageID #33 (¶ 132)) (alleging that IUHP breached the 4/1/2012 Contract by not amending the contact to commensurately compensate Dr. Leon for serving as UF Local Leader, as SCRMD, and on IUHP Committees, or for creating and implementing the COT Program). (*See also* Dkt. 5 at Section 3.1 (the 4/1/2012 Contract's Compensation Plan)).

Further, point (f) of Count V's ¶ 157, unjust enrichment for "Leon Practice" is only pled in the alternative IF a contract does not exist. (*See* Dkt. 1-1 at PageID # 91 (¶ 124)) ("Alternatively, if the Limitations rendered the 4/1/2012 Contract entirely

ineffectively and unenforceable, Dr. Leon claims IUHP was unjustly enrichments by … the value of Dr. Leon's practice") (emphasis in original). Because the Complaint's allegations, viewed in the light most favorable to Plaintiff, establish the 4/1/2012 Contract was effective and enforceable, the breach of contract claim precludes Dr. Leon's unjust enrichment claim pled in the alternative. *See CoMentis,* 765 F. Supp. 2d at 1103 ("CoMentis may not seek unjust enrichment *just in case* the contract does not afford it the relief it seeks; a valid contract still governs the parties' rights with respect to the subject matter at issue." (emphasis in original) (citation omitted)); *DiMizio v. Romo*, 756 N.E.2d 1018, 1025 (Ind. Ct. App. 2001) (Under Indiana law, "unjust enrichment operates where there is no governing contract.").

The relationship between Dr. Leon and IUHP was clearly governed by the 4/1/2012 Contract, and the contract directly addresses the same subjects on which Dr. Leon bases his unjust enrichment claim. These topics are the subject of the 4/1/2021 Contract and cannot also support a claim for unjust enrichment. Therefore, Count V for unjust enrichment fails to state a claim upon which relief can be granted and must be dismissed under Rule 12(b)(6).

## F. <u>Count VI – Interference Claim with Dr. Leon's IUSOM Relationship Fails Pursuant to Rule 12(b)(6)</u>

Count VI alleges that IUHP interfered with Dr. Leon's teaching relationship with the IUSOM, as defined allegedly in part by the 4/1/2012 Contract. (*See* Dkt. 1-1 at PageID # 100 (¶ 159)) (alleging that the Leon-IUSOM Relationship was defined by customs and practices, IUSOM's administrative rules and policies, and the 4/1/2012

Contact). As an initial matter, the Complaint misstates the 4/1/2012 Contract in Paragraphs 159 and 161 relating to the IUSOM faculty position. The 4/1/2012 Contract only states that Dr. Leon "may hold an affiliate faculty appointment from the School," and it acknowledges that teaching time may limit availability to provide clinical services. (Dkt. 5 at Section 1.5(c)). The 4/1/2012 Contract does not establish any relationship between Dr. Leon and IUSOM, or any obligation of IUHP to pay Dr. Leon for IUSOM work, or any obligation of IUHP to agree on a faculty appointment at IUSOM, or any obligation of IUHP to pay Dr. Leon for IUSOM work after his termination from IUHP. As such, the language of the 4/1/2021 Contract seems to preclude any "interference" claim because IUHP owed no such obligations to Plaintiff. In the alternative, if the Plaintiff is claiming that the 4/1/2021 Contract defined a relationship between him and IUSOM with which IUHP interfered, his claim also fails because a party cannot interfere with its own contract. *Trail v. Boys & Girls Clubs of Nw. Indiana*, 845 N.E.2d 130, 138 (Ind. 2006).

Regardless, Plaintiff's Complaint does not satisfy the elements of any recognized interference theory, *e.g.,* interference with business relationship or interference with contract. *See Brazauskas v. Fort Wayne–South Bend Diocese, Inc.*, 796 N.E.2d 286, 291 (Ind. 2003), *cert. denied*, 541 U.S. 902, 124 S.Ct. 1602, 158 L.Ed.2d 244 (2004) (requiring that a party prove some independent illegal action to state a claim for tortious interference with a business relationship, in addition to proof of the elements; *Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228, 1235 (Ind. 1994)

(tortious interference with a contractual relationship requires the existence of a valid and enforceable contract).

The factual allegations relating to Count VI misstate/contradict the 4/1/2012 Contract and do not state a claim for "interference". For these reasons, Count VI should fail.

## G. Count VII – Interference with Dr. Leon's University Membership Claim Fails Pursuant to Rule 12(b)(6)

Count VII alleges that Dr. Leon's relationship with University Hospital via a Staff Membership was contractual in nature and that IUHP interfered with that contractual relationship.[5]  (Dkt. 1-1 at PageID # 102-103 (¶¶ 168-170)). To the extent that Dr. Leon is attempting to allege that the 4/1/2012 Contract governed his University Membership, that is contrary to the language of the Contract itself. The 4/1/2012 Contract says only that Dr. Leon was expected to maintain medical staff membership in good standing at specified facilities, including IU Health Downtown, and that IUHP would pay the cost of medical staff membership during the Agreement. (*See* Dkt. 5 at Section 2.3(c) & Schedule 2.3(c)). The 4/1/2012 Contract does not provide IUHP with the ability to terminate Dr. Leon's medical staff membership at any facility. Indeed, based on the Complaint, it is not possible to tell if, when, or why Dr. Leon's staff membership at any of the listed facilities may have

---

[5] Defendant assumes that Dr. Leon is referring to privileges to practice as a member of the medical staff at IU Health facilities. Privileges/medical staff membership is handled by IU Health, a separate legal entity, not IUHP.

ended. Because of these issues with the factual allegations, Count VIII fails on its face.

Regardless, even if these alleged IUHP obligations were set forth in the 4/1/2012 Contract, a party cannot interfere with its own contracts, and so again, IUHP cannot interfere with the 4/1/2012 Contract. *Trail*, 845 N.E.2d at 138. On the other hand, if the Complaint is attempting to allege that IUHP interfered with some other contract that governed Dr. Leon's University Membership, Count VII fails because the Complaint does not allege facts to support the elements of a tortious interference with contract. Again, tortious interference with a contractual relationship requires the existence of a valid and enforceable contract. *Winkler*, 638 N.E.2d at 1235. The Complaint does not identify any such valid and enforceable contract, to the extent that Count VII is attempting to allege that IUHP interfered with some other contract that governed Dr. Leon's University Membership. Because no contract has been identified, the Complaint also fails to allege facts that support IUHP's knowledge of the existence of the contract, IUHP's intentional inducement of the breach of the contract, and an absence of justification for the IUHP's alleged conduct, and damage resulting from the IUHP's wrongful inducement of the breach of the contract—all necessary elements of a valid interference claim.

In sum, the Complaint fails to allege facts that satisfy the elements of claim for tortious interference with contract, and so Count VII must be dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

## H. **Count VIII – Interference with Patients' Contracts Claim Fails Pursuant to Rule 12(b)(1)[6] and Rule 12(b)(6)**

Count VIII alleges that Dr. Leon's relationships with patients were contractual in nature, and that IUHP interfered with his patients' contracts. (Dkt. 1-1 at PageID # 103-104 (¶¶ 173-175)). Count VIII fails at the outset because the Complaint does not identify any existing valid and enforceable contract(s) that governed Dr. Leon's relationships with his patients. "[T]he right to engage in a physician-patient relationship is not absolute but is instead terminable at will . . . . A contrary holding would restrain normal competition in the marketplace and . . . incorrectly define the physician-patient relationship." *Olaf v. Christie Clinic Ass'n*, 200 Ill. App. 3d 191, 195, 558 N.E.2d 610, 613–14 (1990) (citation omitted). If Dr. Leon had contracts with his patients that could only be terminated for cause, Dr. Leon has failed to identify such contracts.[7] Because the Complaint fails to identify any existing valid and enforceable contract between Dr. Leon and his patient(s), the Complaint fails to state a claim for interference with patient contracts. *Winkler,* 638 N.E.2d at 1235.

---

[6] Count VIII asserts claims on behalf of Dr. Leon's patients. (Dkt. 1-1 PageID # 104 (¶ 175)). As explained above, Dr. Leon does not have standing to bring claims on behalf of his patients. *See Apex Digital, Inc.*, 572 F.3d at 443-44. Therefore, the claims for interference with alleged patient contracts made on behalf of Dr. Leon's patients must be dismissed for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1).

[7] Moreover, the conclusory allegation that the patients were only Dr. Leon's patients is contrary to the 4/1/2012 Contract, which states that all patients are IUHP patients. (*See* Dkt. 5 at Section 4.1 ("All patients seen by Physician during Physician's employment with IUHP will be invoiced as patients of IUHP and such invoices will list Physician as the individual provider.").

The Complaint fails to allege facts that support other elements of a claim for tortious interference with contract. If Dr. Leon had contracts with patients, not only would that be contrary to his contract with IUHP, but the Complaint does not allege facts establishing that IUHP knew about these contracts, that IUHP intentionally interfered with these contracts, that IUHP intentionally induced the breach of contract, that there was an absence of justification for IUHP's alleged conduct, or that damages resulted for IUHP alleged inducement of the breach of patient contracts of which it had no knowledge.

Based on the foregoing, the Complaint fails to state a claim for tortious interference with contract, and so Count VIII must be dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

## I.  Count IX – Infliction of Emotional Distress ("IIED") Claims Fail Pursuant to Rule 12(b)(1)[8] and Rule 12(b)(6)

Count IX alleges that IUHP intentionally and/or recklessly inflicted severe emotional distress on Dr. Leon, Deborah Leon, and Dr. Leon's patients, through various alleged conduct. The conduct that Count IX alleges includes the following:

(1) "the hostile environment Dr. Leon encountered at IUHP-PC";
(2) "Dr. Gebke's animus toward Dr. Leon";
(3) "Dr. Gebke's threat to initiate a 'for cause' termination of Dr. Leon if he pursued his rights under the 4/1/2012 Contract";
(4) "the sending of the 10/1/2020 Nonrenewal Letter shortly after Deborah had suffered a major stroke and Dr. Leon had just returned from family leave during which he had cared for her";
(5) "the fraudulent misrepresentations in the 2/1/2021 Letter";

---

[8] Again, Plaintiffs do not have standing to assert such claims on behalf of Dr. Leon's patients. *See Apex Digital, Inc.*, 572 F.3d at 443-44. The claim that IUHP inflicted emotional distress on Dr. Leon's patients, (*see* Dkt. 1-1 at PageID # 106 (¶¶ 179, 180)), must be dismissed for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1).

(6) "the inescapable interconnection of Deborah to the emotional distress suffered by Dr. Leon";

(7) "contravening (i) IUHP-PC's Directives, (ii) IUHP's duties of conduct as a nonprofit corporation with a 501(c)(3) tax exempt status, (iii) IUHP's fiduciary duties to Dr. Leon allowing him to exercise his best professional judgment and act in the best medical interest of his patients and (iv) the rights of Dr. Leon and his patients to life, liberty and property by treating Dr. Leon's patients as IUHP-PC physician patients when they were not and could not be"; and

(8) "requiring Dr. Leon to meet with his patients and personally advise them of his unavailability to continue as their physician at UF".

(Dkt. 1-1 at PageID # 105-106 (¶¶ 177, 179)).

This claim must be dismissed for failure to state a claim upon which relief can be granted, because the Complaint does not plead facts that establish the requisite elements of IIED. Fed. R. Civ. P. 12(b)(6). In *Cullison v. Medley*, 570 N.E.2d 27, 31 (Ind. 1991), the Indiana Supreme Court defined the tort of IIED as "one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another," And the requirements to prove this tort are "rigorous." To be extreme and outrageous, conduct must go "beyond all possible bounds of decency"— the type of conduct "regarded as atrocious and utterly intolerable in a civilized society." *Lindsey v. DeGroot,* 898 N.E.2d 1251, 1264-1265 (Ind. Ct. App. 2009). For example, the Indiana Court of Appeals has found child molestation to be extreme and outrageous. *Tucker v. Roman Cath. Diocese of Lafayette-In-Indiana*, 837 N.E.2d 596, 603 (Ind. Ct. App. 2005). In the appropriate case, this element can be decided as a matter of law. *Id.*

<u>Simply put, the Complaint does not plead *facts* that establish that IUHP intentionally or recklessly inflicted emotional distress, or that IUHP's alleged conduct was extreme and outrageous</u>. The Court does not need to consider the Complaint's legal conclusions that IUHP acted intentionally or recklessly, or that alleged conduct was extreme and outrageous. *See Skinner v. Metro. Life Ins. Co.*, 829 F. Supp. 2d 669, 685-87 (N.D. Ind. 2010) (granting a 12(b)(6) motion to dismiss an IIED claim, the Court noted, "Linda's statement that MetLife's conduct was 'extreme and outrageous' is a legal conclusion that the court need not consider in ruling on the motion to dismiss. The court needs to determine whether Linda's factual allegations can plausibly give rise to an inference that MetLife's actions were extreme and outrageous."). Here, the Complaint's alleged facts do not give rise to an inference that IUHP acted with intent or recklessness, or IUHP's alleged conduct went "beyond all possible bounds of decency" and would be "regarded as atrocious and utterly intolerable in a civilized society." *Lindsey,* 898 N.E.2d at 1264–1265. Further arguments about the specific alleged conduct that caused emotional distress are below:

- The Complaint alleges that "the hostile environment Dr. Leon encountered at IUHP-PC" caused emotional distress. First, "hostile work environment"[9] is a legal term and a legal conclusion that the Court

---

[9] Typically, a claim of "hostile work environment" is brought under anti-discrimination statutes such as Title VII, based on a statutorily protected class. To the extent Dr. Leon is attempting to allege a statutory claim, such as age-based hostile work environment, the Complaint does not plead facts to establish that IUHP created a hostile work environment based on any statutorily protected class.

does not need to consider. With respect to any "hostile work environment," the Complaint fails to identify specific intentional or reckless conduct that allegedly created an environment that caused Dr. Leon severe and outrageous emotional distress. The Complaint does not allege any conduct that could be regarded as "atrocious and utterly intolerable in a civilized society." *Lindsey,* 898 N.E.2d at 1264–1265.

- The Complaint alleges that "Dr. Gebke's animus toward Dr. Leon" caused emotional distress. The Complaint does not plead facts that establish Dr. Gebke engaged in any conduct which would satisfy the "severe and outrageous" element of an IIED claim.

- The Complaint alleges that "Dr. Gebke's threat to initiate a 'for cause' termination of Dr. Leon if he pursued his rights under the 4/1/2012 Contract" caused emotional distress. Even if Dr. Gebke did make the alleged threat (which IUHP denies), this conduct would not satisfy the "severe and outrageous" element of an IIED claim.

- The Complaint alleges that "the sending of the 10/1/2020 Nonrenewal Letter shortly after Deborah had suffered a major stroke and Dr. Leon had just returned from family leave during which he had cared for her" caused emotional distress. This alleged conduct would not satisfy the severe and outrageous element of an IIED claim.

- The Complaint alleges that "the fraudulent misrepresentations in the 2/1/2021 Letter" caused emotional distress. However, nothing about the

wording or sending of the letter, even assuming that Dr. Leon did not expressly approve it, is severe and outrageous under Indiana law.[10]

- The Complaint does not allege any conduct of IUHP toward Deborah at all, but alleges that "the inescapable interconnection of Deborah to the emotional distress suffered by Dr. Leon" caused her emotional distress. This concept is contrary to Indiana law. There simply are no facts in the Complaint that would support any claim by Deborah against IUHP for intentional infliction of emotional distress. Nothing in the Complaint establishes that IUHP acted in any way toward Deborah, let alone in a severe or outrageous way, or otherwise intentionally or recklessly inflicted emotional distress on Deborah.

- The Complaint alleges that "contravening (i) IUHP-PC's Directives, (ii) IUHP's duties of conduct as a nonprofit corporation with a 501(c)(3) tax exempt status, (iii) IUHP's fiduciary duties to Dr. Leon allowing him to exercise his best professional judgment and act in the best medical interest of his patients and (iv) the rights of Dr. Leon and his patients to life, liberty and property by treating Dr. Leon's patients as IUHP-PC physician patients when they were not and could not be" caused emotional distress. Again, some of these allegations are conclusory and need not be assumed true for purposes of this motion, nor do they specify

---

[6] To the extent this part of Dr. Leon's claim is duplicative of his claim for fraudulent misrepresentation, it should be dismissed for the same reasons as Count IV – including but not limited to because it fails to plead any alleged fraudulent misrepresentation with requisite specificity as required by Rule 9(b). (*See* Part IV.D *supra*).

any actual conduct alleged to have caused emotional distress. As such, there is no factual basis alleged in this paragraph for the Court to find any conduct that would satisfy the "severe and outrageous" element of an IIED claim. Also, some of these allegations are asserted as its own Count—*e.g.*, Count XVII is based on the Constitutional allegation that IUHP allegedly contravened Dr. Leon's rights to life, liberty, and property. To the extent these claims are duplicative of other claims, they should be dismissed for the same reason(s) as those claims, as set forth in this Brief. (*See* Part IV.N *infra*).

- The Complaint alleges that "requiring Dr. Leon to meet with his patients and personally advise them of his unavailability to continue as their physician at UF" caused emotional distress. The Complaint does not plead facts that establish IUHP acted with intent or recklessness, even if it is assumed true that he was asked to meet with his patients. Even so, this conduct would not satisfy the "severe and outrageous" element of an IIED claim.

Based on the above, the allegations that IUHP intentionally inflicted emotional distress on Dr. Leon and Deborah must be dismissed for failure to state a claim upon which relief can be granted, because the Complaint does not plead facts that establish the requisite elements of IIED. Fed. R. Civ. P. 12(b)(6). Additionally, the claim that IUHP intentionally inflicted emotional distress on Dr. Leon's patients must be dismissed for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1).

**J.** **Count XI – Third-Party Beneficiary Claim on Behalf of Dr. Leon Fails Pursuant to Rule 12(b)(6)**

Dr. Leon alleges that he was a third-party beneficiary of an unspecified contractual relationship between IUSOM and IUHP. The Complaint fails to plead facts that establish that Dr. Leon is entitled to third-party benefits from IUHP under any alleged contract, and so Count XI must be dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

Dr. Leon's claims are not clear, but he seems to suggest that he was entitled to ongoing payment from IUHP related to his status as a faculty member after his employment termination with IUSOM. Nothing in the 4/1/2012 Contract created any obligation for IUHP to compensate him after termination, nor does the 4/1/2012 Contract create any obligation for IUHP to pay Dr. Leon for IUSOM faculty services. In fact, the 4/1/2012 Contract specifies all the compensation to which Dr. Leon was entitled, and it contains an integration clause making clear that the 4/1/2012 Contract constitutes "the entire agreement between the Parties pertaining to the subject matter contained in this Agreement[.]" (Dkt. 5 at Section 7.7.) As such, the 4/1/2012 Contract disclaims any other source of obligations between IUHP and Dr. Leon relating to compensation.

Regardless, Dr. Leon's claim fails. To plead a third-party beneficiary claim, the Complaint must consist of factual allegations that support the following elements: (1) the intent to benefit a third party in the contract is clear, (2) the contract imposes a duty on one of the contracting parties in favor of the third party, and (3) the

performance of the terms necessarily renders to the third party a direct benefit intended by the parties to the contract. *Bowman v. Int'l Bus. Machs. Corp.*, 853 F. Supp. 2d 766, 769 (S.D. Ind. 2012) (citing Indiana law). Dr. Leon's Complaint is void of any facts suggesting as much. It fails to identify the terms of any alleged contract between IUHP and IUSOM rendering Dr. Leon a third-party beneficiary, the terms of any such contract expressing any intent to benefit Dr. Leon, or terms of such contract rendering any benefit to Dr. Leon from IUHP through the performance of the contract, and no such contract is attached to the Complaint. As such, Dr. Leon's claim fails and must be dismissed.

### K. **Count XII – Crime Victim Statute Claims Fail Pursuant to Rule 12(b)(6)**

Count XII asserts claims[11] under the Crime Victim Statute, citing Ind. Code § 35-43-5-3. Count XII must be dismissed because effective July 1, 2021, the Crime Victim Statue was repealed. *See* Ind. Code § 35-43-5-3. To the best of undersigned counsel's knowledge, the statute has not been recodified.[12]  Because the statute is no longer in effect, Count XII fails to statute a claim upon which relief can be granted and must be dismissed. Fed. R. Civ. P. 12(b)(6).

---

[11] Count XII asserts claims on behalf of Dr. Leon's patients and on behalf of Dr. Leon himself. As previously discussed, Dr. Leon does not have standing to assert claims on behalf of his patients, and so any claims made on behalf of Dr. Leon's patients should be dismissed for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1).

[12] Even if the Crime Victim Statute was recodified is otherwise still in effect, the statute would not apply here because the statute applied to situations in which certain crimes were allegedly committed. The Crime Victim Statute simply has no application to this case.

**L.  Count XIII – Defamation Claim Fails Pursuant to Rule 12(b)(6)**

Defamation is "that which tends to injure reputation or to diminish esteem, respect, good will, or confidence in the plaintiff, or to excite derogatory feelings or opinions about the plaintiff." *Davidson v. Perron*, 716 N.E.2d 29, 37 (Ind. Ct. App. 1999), *trans. denied*. The Complaint here alleges that certain allegedly defamatory statements were "*per se* defamations because they asserted and/or imputed conduct by Dr. Leon by disparaging his professionalism as a physician provider." (Dkt. 1-1 at PageID # 111-112 (¶ 201)). Defamation *per se* involves a communication imputing: "(1) criminal conduct; (2) a loathsome disease; (3) misconduct in a person's trade, profession, office, or occupation; or (4) sexual misconduct." *Town of W. Terre Haute, Indiana v. Roach*, 52 N.E.3d 4, 10 (Ind. Ct. App. 2016) (citation omitted).Count XIII fails to state a claim upon which relief can be granted, because the Complaint does not identify: any actual allegedly defamatory *per se* statements (but rather only generally describes them); to which parties the statements were communicated; when the statements were communicated; the number of incidents; or when/where the defamatory information was released and to whom.

This Court has granted 12(b)(6) motions to dismiss defamation claims due to the Complaint's failure to identify or outline the alleged defamatory statement(s). *See, e.g., Ballantine v. Amazon.com.indc LLC,* No. 1:18-CV-02546-JPH-MJD, 2019 WL 2453153 (S.D. Ind. Mar. 14, 2019), *report and recommendation adopted*, No. 1:18-CV-02546-JPH-MJD, 2019 WL 2451668 (S.D. Ind. June 11, 2019) (dismissing plaintiff's defamation claim under Rule 12(b)(6) for lack of specificity); *Farr v. St. Francis Hosp.*

& *Health Ctrs.*, No. 1:06-cv-779-SEB-JMS, 2007 WL 2793396, at *3 (S.D. Ind. Sept.

26, 2007) (same). *Ballantine* explained as follows:

> The determination of whether a communication is defamatory is a
> question of law for the courts. While not necessarily verbatim, a Plaintiff
> must outline the defamatory statement(s) in his complaint, even under
> the relaxed pleading standards. The Plaintiff's Proposed Amended
> Complaint provides only general assertions that his employee record is
> based upon an allegedly false safety violation; it does not identify actual
> statements communicated to any party, the number of incidents, to
> whom the statements were made, the timeframe of any communications,
> or any other context to support a sufficient defamation or defamation
> *per se* claim.

*Ballantine*, 2019 WL 2453153 at *11 (citations and internal quotation marks omitted)

(emphasis added). *See also Ali v. All. Home Health Care, LLC*, 53 N.E.3d 420, 428

(Ind. Ct. App. 2016) ("[T]his allegation does not specifically identify the statements

alleged to have been made by each of the several named individuals 'or other agents.'

Nor does it specify the persons to whom (or in front of whom) the alleged defamatory

statements were published. We find that it lacks the specificity necessary to state a

claim for defamation.").

Here, too, the Complaint vaguely describes "written and oral statements" that

IUHP's officers and employees, referred to as "IUHP Agents," made and/or

distributed. (Dkt. 1-1 at PageID # 111 (¶ 198)). The Complaint does not detail the

statements or describe which officers and employees made or distributed the

statements. The Complaint alleges one defamatory statement was that "Dr. Leon had

a prejudice against women employees," (Dkt. 1-1 *at* PageID # 111 (¶ 200)), but the

Complaint does not describe who and how this statement was made, to whom it was

made, the number of times it was made, when it was made, or any other details.

The Complaint also alleges that the 10/1/2020 Nonrenewal letter was a defamatory statement "because it falsely imputed there had to be a cause for terminating Dr. Leon of such gravitas that he dared not challenge his termination after twenty-three years of service at IUHP." (Dkt. 1-1 at PageID # 112 (¶ 202)). This alleges only that there were misrepresentations in the 10/1/2020 Nonrenewal Letter about cause to terminate Dr. Leon—this does not allege that anything in the 10/1/2020 Nonrenewal Letter is a statement which has been published and "which tends to injure reputation or to diminish esteem, respect, good will, or confidence in the plaintiff, or to excite derogatory feelings or opinions about the plaintiff." *Davidson*, 716 N.E.2d at 37. The Complaint also does not allege in what way the 10/1/2020 Nonrenewal Letter or any statements therein were published to any third party since it was only a letter to Dr. Leon, according to the Complaint.

Lastly, the Complaint alleges that the 2/1/2021 Letter sent to Dr. Leon's patients was defamatory because it represented that Dr. Leon endorsed physicians at IUHP-PC as "highly skilled" even though Dr. Leon told IUHP-PC that a letter with such language was unacceptable. (Dkt. 1-1 at PageID # 112 (¶ 205)). In other words, he complains that it *suggests* he believed other IUHP physicians were "highly skilled." Even assuming the allegations in the Complaint are true, Dr. Leon does not identify any statement in the 2/1/21 Letter that "tend[s] to injure [his] reputation or to diminish esteem, respect, good will, or confidence in the plaintiff, or to excite derogatory feelings or opinions about the plaintiff." *Davidson*, 716 N.E.2d at 37.

Based on the foregoing, Count XIII fails to state a claim and must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### M. Count XIV – Invasion of Right of Privacy Claims Fail Pursuant to Rule 12(b)(1) and Rule 12(b)(6)

Count XIV must be dismissed under Fed R. Civ. P. 12(b)(1)[13] and (6). "Under Indiana law, the tort of invasion of privacy is a label used to describe four types of injury: (1) intrusion upon seclusion; (2) appropriation of likeness; (3) public disclosure of private facts; and (4) false-light publicity. This tort has been construed narrowly by Indiana courts." *Sharkey v. Cochran*, No. 1:09-CV-0517-JMS-DKL, 2012 WL 967057, at *10 (S.D. Ind. Mar. 21, 2012) (citations omitted). Here, the Complaint does not even clearly specify which type(s) of invasion of privacy is being alleged, and so there is no cognizable cause of action for this reason alone. Regardless of which type(s) the Complaint attempts to plead, there are insufficient facts in the Complaint to state any type of invasion of privacy claim.

Under any theory, this claim fails. For these reasons, Count XIV must be dismissed under Fed R. Civ. P. 12(b)(6).

### N. Counts XV and XVII – Intimidation, Harassment, Retaliatory Discharge, and Constitutional Claims Fail Pursuant to Rule 12(b)(6)

Count XV's (a) intimidation claim; (b) harassment claim; and (c) retaliatory discharge claims must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

---

[13] Count XIV asserts claims on behalf of Dr. Leon and Dr. Leon's patients. First, as detailed above, Dr. Leon does not have standing to bring claims on behalf of his patients, and so to the extent that this Count references the alleged invasion of his patients' privacy, such claims should be dismissed because the Court lacks jurisdiction. Fed R. Civ. P. 12(b)(1).

To begin, neither "intimidation" or "harassment" are not recognized civil claims in Indiana, so they must be dismissed. To the extent Dr. Leon intends to plead different causes of action, the Complaint fails to state a claim and should be dismissed under Rule 12(b)(6).[14]

Dr. Leon's constitutional claims in Counts XV and XVII, including but not limited to the claim that he was retaliated against for exercising alleged First Amendment rights, fail for several reasons. First, IUHP does not concede it is a state actor or "person" otherwise subject to constitutional claims. The Complaint alleges that IUHP is liable under 42 U.S.C. § 1983 because it violated the First, Fifth, Thirteenth, and Fourteenth Amendments of the U.S. Constitution by imposing restraints upon his right of free speech, failing to pay him for his services, and not renewing the 4/1/2012 Contact. (Dkt. 1-1 at PageID # 57 (¶¶ 220-221)).

The Complaint fails to allege facts that establish state action as required to plead a claim under 42 U.S.C. § 1983. Individuals can assert claims for violation of their constitutional rights under 42 U.S.C. § 1983, but such claims can only be asserted against the State or state actors. Section 1983 states, in relevant part, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall

---

[14] To the extent that he is trying to allege a hostile work environment claim, the Complaint fails to allege he was subject to a hostile work environment because of a protected class. (Dkt. 1-1 at PageID # 115 (¶ 212)).

be liable to the party injured[.]" To state a claim under 42 U.S.C. § 1983 requires two elements: "First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of the right acted under color of state . . . law." *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980).

The under-color-of-state-law element of 42 U.S.C. § 1983 "excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (internal quotation marks omitted) (citations omitted). "To state a § 1983 claim against a private actor, plaintiff[] must show that the defendant invoked state authority in such a way that the defendant should be considered a state actor." *Davis v. Union National Bank*, 46 F.3d 24, 25 (7th Cir. 1994). Private action can become state action when there is such a close nexus between the state and the challenged action that seemingly private behavior reasonably may be treated as that of the state itself. *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974). If the plaintiff does not show that the defendants were acting under color of state law, the section 1983 claim must be dismissed. *See, e.g., Robinson v. RIH Acquisitions,* No. 2:06-CV-413, 2007 WL 2286109, at *3 (N.D. Ind. Aug. 6, 2007) (granting the defendants' 12(b)(6) motion to dismiss claims brought under 42 U.S.C. § 1983, stating, "[T]he facts of this case, as plead in the complaint and with all inferences in favor of the plaintiff, make it clear that plaintiff cannot establish the state action required to prevail on his section 1983 claims.").

Here, the Complaint admits that IUHP is a private, non-profit corporation. (Dkt. 1-1 at PageID # 58 (¶¶ 222-224)). The Complaint conclusorily alleges that IUHP is a "person" under Section 1983 because of its affiliation with IUSOM, a state entity. (*See* Dkt. 1-1 at PageID # 57 (¶ 220)). Although IUHP has an affiliation with IUSOM, this alone is not sufficient to create a nexus between IUSOM and the challenged conduct such that the conduct may be treated as state action. *See American Mfrs. Mut. Ins. Co.*, 526 U.S. at 50; *Davis*, 46 F.3d at 25. The Complaint does not plead facts alleging that a nexus existed between state entity IUSOM and the alleged conduct. *See Babchuk v. Indiana Univ. Health, Inc.*, 809 F.3d 966, 971 (7th Cir. 2016) (holding that the defendants were not state actors acting under color of law). Because of this, the Complaint fails to allege state action, and the constitutional claims in Counts XV and XVII fail.

Even if state action was adequately pled in the Complaint, the constitutional claims fail for other reasons. As explained above, the Complaint does not plead facts that establish Dr. Leon's speech was made outside the scope of Dr. Leon's duties, and speech made within the scope of one's duties is not protected under the First Amendment. *See Garcetti v. Ceballos*, 547 U.S. 410, 421, 126 S. Ct. 1951, 1960, 164 L. Ed. 2d 689 (2006). As also stated above, an alleged breach of contract does not give rise to a constitutional claim or a due process claim under the Fifth or Fourteenth Amendments. *Taake v. Cnty. Of Monroe*, 530 F.3d 538, 542 (7th Cir. 2008) ("Our caselaw already explains that mere breaches of contract by the government do not support substantive due process claims under the Constitution[.]"). For these reasons,

too, the Complaint fails to state a claim that IUHP violated Dr. Leon's U.S. Constitutional rights.

Also, with respect to the constitutional retaliatory discharge claims[15] in Count XV, Dr. Leon does not establish that any property rights or First Amendment rights were at issue. The claim alleging that IUHP retaliated against him because it did not renew the 4/1/2012 Contract based on actions taken by him that are protected under alleged property rights do not survive since Dr. Leon does not have any property rights in a contractual relationship. (Dkt. 1-1 at PageID # 55 (¶ 213)). *See Draghi v. Cnty. of Cook*, 184 F.3d 689, 692 (7th Cir. 1999) ("Dr. Draghi's mere status as a Hospital employee does not create a property interest for purposes of the Fourteenth Amendment."; *Tunca v. Lutheran Gen. Hosp.*, 844 F.2d 411, 414 (7th Cir. 1988) ("There is clearly no constitutionally protected right to be able to practice medicine at the hospital of one's choice." (citing *Board of Regents v. Roth*, 92 S. Ct. 2701 (1972)). *Cf. Woodbury v. McKinnon*, 447 F.2d 839, 842 (5th Cir. 1971) ("A doctor has no constitutional right to practice medicine in a public hospital.").

The Complaint also alleges that IUHP is liable under common law negligence for breaching duties owed to Dr. Leon under Article I, Sections 9, 12, 21, and 23 of the Indiana Constitution by not providing Dr. Leon a notice of and opportunity to comment on the 10/1/2020 Nonrenewal Letter and not renewing the 4/1/2012 Contract for cause. (Dkt. 1-1 at PageID # 58 (¶¶ 222-224)). But, neither the Indiana

---

[15] IUHP denies but is not moving to dismiss the retaliatory discharge claim only to the extent Dr. Leon alleges he was terminated in retaliation for use of FMLA benefits.

Supreme Court nor the Indiana Court of Appeals has ever held that a private right of action for damages exists under the Indiana Constitution.

The Indiana Supreme Court, in *Cantrell v. Morris*, 849 N.E.2d 488, 492 (Ind. 2006), declined to recognize a private right of action arising under the Indiana Constitution on a certified question from the U.S. District Court, Northern District Indiana. A year later, the Indiana Court of Appeals affirmed that there is no express or implied right of action for monetary damages under the Indiana Constitution. *Smith v. Indiana Department of Correction, et al.*, 871 N.E.2d 975, 985-86 (Ind. Ct. App. 2007). The Court noted that no Indiana court has explicitly recognized a private right of action under the Indiana Constitution. *Id*. Furthermore, the Court noted that the Indiana Supreme Court has "never held that the Open Courts Clause provides a substantive right of access to the courts or to bring a particular cause of action to remedy an asserted wrong." *Id.* (citation and internal quotations omitted). *See also Blanck v. Ind. Dep't of Corr.*, 829 N.E.2d 505, 511 (Ind. 2005) ("[W]e have never held that the Open Courts Clause [Article I, Section 12] provides a substantive 'right' of access to the courts or to bring a particular cause of action to remedy an asserted wrong."). For these reasons, the Complaint fails to state a claim that IUHP violated Dr. Leon's Indiana Constitutional rights. Fed. R. Civ. P. 12(b)(6).

Based on the above, Count XV and Count XVII's (a) intimidation claim; (b) harassment claim; (c) retaliatory discharge claim; and (d) constitutional claims must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

**O. Count XVI – Loss of Consortium Claims Fail Pursuant to Rule 12(b)(6)**

Count XVI must be dismissed under Fed. R. Civ. P. 12(b)(6). This Court has held that there can be no loss of consortium claim unless a legal wrong has been committed. *Hedden v. CBS Corp.*, 2015 WL 5775570, at *17 (S.D. Ind. Sept. 30, 2015) (holding that under Indiana law loss of consortium claims "are derivative from the spouse's underlying claim, in that, if the underlying claim cannot be proven, then the loss of consortium claim fails."). In other words, a loss of consortium claim must be derivative of a state claim – typically a tort law claim. Here, the only claims on which IUHP has not moved to dismiss most of the Counts in the Complaint, and the only claims that would remain if its Motion were granted have defined remedies. Thus, loss of consortium remedies not being one of them. More specifically, loss of consortium is not a remedy available for the claims which are not subject to this Motion to Dismiss, which include Dr. Leon's claim for breach of his employment contract, his claims brought under the Age Discrimination in Employment Act, and any claim for retaliatory discharge under the Family and Medical Leave Act. Therefore, Count XVI must be dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

**P. Count XVIII – Restraint of Trade Claim Fails Pursuant to Rule 12(b)(1) and Rule 12(b)(6)**

Count XVIII must be dismissed because Dr. Leon lacks standing to assert a restraint of trade claim. Even if he has standing, Count XVIII should nevertheless be

dismissed because it fails state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(1), (6).

"Before enacting its antitrust statutes, Indiana recognized a common law private right of action in those individuals injured by acts in restraint of competition. The Indiana courts have held that the Indiana antitrust statute was intended to be declarative of the common law prohibition against restraint of trade. Indiana has no modern cases involving the common law tort of restraint of trade distinct from the elements of an action under Indiana's antitrust statutes. Because the Indiana antitrust statutes are considered to be declarative of the common law, there is no reason to believe that the elements of a common law action for restraint of trade differ from those of a statutory cause of action." *Deich-Keibler v. Bank One*, 243 F. App'x 164, 169 (7th Cir. 2007) (citing *Knight & Jillson Co. v. Miller*, 172 Ind. 27, 87 N.E. 823, 827–28 (1909)).

Indiana's antitrust statute does not provide a cause of action for private individuals. *See Perry v. Hartz Mountain Corp.*, 537 F. Supp. 1387, 115 L.R.R.M. (BNA) 4934, 64 A.L.R. Fed. 816 (S.D. Ind. 1982) (former employee's complaint against former employer for former employer's alleged violations of Indiana antitrust law would be dismissed because former employee lacked standing to bring antitrust suit against former employer and because only authorized civil suits for violations of antitrust statute only in the name of the State upon the relation of a proper party (citing Ind. Code 24-1-2-5)). Therefore, Dr. Leon lacks standing to bring Count XVIII,

and so Count XVIII must be dismissed for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1).

To the extent Dr. Leon is attempting to assert a claim under something other than the Indiana antitrust statute, the Complaint fails to plead facts a cognizable claim, and so any such claim must be dismissed under Fed. R. Civ. P 12(b)(6).

## V.   CONCLUSION

**WHEREFORE**, Defendant, by counsel, respectfully asks the Court to dismiss the following Counts pursuant to Federal Rule of Civil Procedure 12(b)(1): all claims asserted on behalf of Dr. Leon's patients, Count III, Count IV, Count VIII, Count IX, Count X, Count XIV, and Count XVIII; and the following Counts pursuant to Federal Rule of Civil Procedure 12(b)(6): Count II, Count IV, Count V, Count VI, Count VII, Count VIII, Count IX, Count XI, Count XII, Count XIII, Count XIV, Count XV, Count XVI, Count XVII, and Count XVIII, and to grant Defendant all other just and appropriate relief.

Respectfully submitted,

*/s/ Laurie E. Martin*
Laurie E. Martin (#26877-49)
Katherine L. English (#35219-49)
HOOVER HULL TURNER LLP
111 Monument Circle, Suite 4400
P. O. Box 44989
Indianapolis, IN 46244-0989
Telephone: (317) 822-4400
Facsimile: (317) 822-0234

lmartin@hooverhullturner.com
kenglish@hooverhullturner.com

*Attorneys for Defendant*

46

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was served upon all counsel of record via the Court's Electronic Notification system, this 8th day of August 2022.

*/s/ Laurie E. Martin*
Laurie E. Martin

121728v2