UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BRIAN LEON M.D. FACP,<br>DEBORAH LEON Husband and Wife,<br><br>           Plaintiffs,<br><br>    v.<br><br>INDIANA UNIVERSITY HEALTH CARE<br>ASSOCIATES, INC.,<br><br>           Defendant. | )<br>)<br>)<br>)<br>)<br>)  No. 1:22-cv-00937-JRS-MG<br>)<br>)<br>)<br>)<br>)<br>) |

**Order on Cross Motions for Summary Judgment**

This is an employment dispute about Dr. Leon's rocky departure from Indiana University Health Physicians ("IUHP"), his employer of many years. Dr. Leon's sprawling complaint survived IUHP's motion to dismiss, (Order, ECF No. 53), but now, with cross-motions for summary judgment pending, (ECF Nos. 134 (Dr. Leon), 138 (IUHP)), a different standard applies. *See Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (summary judgment is the "put up or shut up" moment).

I.     **Legal Standard**

The legal standard on summary judgment is well established:

> Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Skiba* [*v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018)] (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 [] (1986)). A theory "too divorced from the factual record" does not create a genuine issue of material fact. *Id.* at 721. "Although we construe all facts and make all reasonable inferences in the nonmoving party's favor, the moving party may succeed by

showing an absence of evidence to support the non-moving party's claims." *Tyburski v. City of Chicago*, 964 F.3d 590, 597 (7th Cir. 2020). *Marnocha v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 986 F.3d 711, 718 (7th Cir. 2021). The Court applies that standard here.

**II.   Discussion**

  A. Failure to Respond

This case remains "unwieldy" at best. (Order 5, ECF No. 53.)

Part of the problem is formal: Dr. Leon's summary judgment briefing, though adequately written and understandable as far as it goes, only roughly comports with the Local Rules, *see* S.D. Ind. L.R. 56-1 (calling for section titled "Statement of Material Facts" and requiring specific citations to record); is broken into two largely but not entirely duplicative documents, (*Compare* Pl.'s Motion, ECF No. 134, *with* Pl.'s Br. Supp., ECF No. 134-1); is arranged as a set of "conclusions of law" without reference (or, indeed, apparent connection) to the underlying legal theories; invokes legal concepts inapplicable to the facts at hand; and takes an idiosyncratic approach to emphasis by underlining and italics. That all makes it difficult to understand Dr. Leon's position.

The formal problem is made worse by a substantive problem: the Parties do not agree what the case is about. IUHP's theory is simple: it thinks it employed Dr. Leon under a 2012 Employment Agreement, that it complied with those terms both during Dr. Leon's employment and choosing not to renew it pursuant to its terms, and that, as a result, there is no case. (Def.'s Br. Supp. 1–2, ECF No. 141.) Dr. Leon's theory is much harder to discern. (Pl.'s Br. Supp. 2, ECF No. 134-1.) He seems to believe he

was not an employee but a small business owner, entitled to control of various aspects of his practice, (Leon Aff. 10 (control of staffing), 13 (review of colleague complaints), 15 (electronic medical records policy), 17 (patient letter), ECF No. 146), and he seems to argue that IUHP somehow mistreated him in that regard.  But Dr. Leon does not himself connect his grievances to a legal theory of recovery—which, unlike at the pleading stage, he now must—and there is no implicit theory of the case apparent to the Court.  *Cf. Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999) ("[O]ur judges are busy people. If they are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning.").  For instance, Dr. Leon spends most of his pages arguing that the 2012 employment contract was somehow invalid.  Even if that were true, where does it get him?  Without a contract he is a mere at-will employee, with at best scant protection from firing, *Perkins v. Mem'l Hosp. of S. Bend*, 141 N.E.3d 1231, 1235 (Ind. 2020), and no expectation beyond his pay, which, so far as the Court can tell, he acknowledges he was given.  There is no coherent picture of how Dr. Leon was harmed, what redress he seeks, or what a jury could here be asked to resolve.

More pointedly, IUHP's cross-motion for summary judgment addresses each of the legal theories remaining in Dr. Leon's Complaint and argues, with supporting citations to the record, how they fail. (Def.'s Br. Supp. 8–46, ECF No. 141.)  Such a motion obliges Dr. Leon to respond with a legal argument to the contrary or with specific, material, disputed facts.  Fed. R. Civ. P. 56(c); S.D. Ind. L.R. 56-1; J. Sweeney

Prac. & Proc. II.D. "A party opposing summary judgment does not meet [the rules'] obligation by simply dropping a stack of paper into the court file (literally or electronically) and asserting that someone who reads the stack will find a genuine issue of material fact." *McKinney v. Off. of Sheriff of Whitley Cnty.*, 866 F.3d 803, 808 (7th Cir. 2017). That is what Dr. Leon attempts here. His response to IUHP's exhaustive motion is a reference to his motion to dismiss briefing, a personal affidavit, and a 260-page "appendix" of improperly labelled exhibits. (Pl.'s Resp. 36–38, ECF No. 145); *see* Prac. & Proc. II.D.7. Dr. Leon does not address, much less rebut, IUHP's arguments. The Court has no duty to "scour every inch of the record", *Grant v. Trustees of Indiana University*, 870 F.3d 562, 572–73 (7th Cir. 2017), Fed. R. Civ. P. 56(c)(3), S.D. Ind. L.R. 56-1(h), *Packer v. Trustees of Indiana Univ. Sch. of Med.*, 800 F.3d 843, 848 (7th Cir. 2015) ("We have long sustained such [stringent local] rules."), and certainly no duty to construct a coherent argument for a represented party, *Horne v. Elec. Eel Mfg. Co., Inc.*, 987 F.3d 704, 727 (7th Cir. 2021).

The Court would be justified in taking IUHP's motion as effectively unopposed, granting it in its entirety, and calling it a day. *O'Gorman v. City of Chicago*, 777 F.3d 885, 890 (7th Cir. 2015) ("We have repeatedly held that a party opposing a motion in the district court must inform the court of the factual and legal reasons why the motion should not be entered"). But a brief run through the remaining arguments shows that this case fails on the merits, too.

B.  The Contract

Dr. Leon signed an April 2012 "Employment Agreement" with IUHP.  (Contract, ECF No. 140-2; Leon Dep. 6–8, ECF No. 139-3 (acknowledging contract and signature).)  The first, and largest, of Dr. Leon's stated claims, (Statement of Claims 3–60, ECF No. 111), are his "Count I Contract Claims," in which he argues that the agreement was somehow invalid.  That is an uphill battle, *Robert's Hair Designers, Inc. v. Pearson*, 780 N.E.2d 858, 869 (Ind. Ct. App. 2002) (identifying Indiana's "very strong presumption" in favor of enforceability), and Dr. Leon's arguments are far from cogent.

The contract is a perfectly ordinary employment contract—perhaps, if anything, rather more lucid than average.  Dr. Leon is presumed to have read and understood it when he signed, *John M. Abbott, LLC v. Lake City Bank*, 14 N.E.3d 53, 58 (Ind. Ct. App. 2014), and the contract itself recites, in the final paragraph above the signature line, that each party read and assented to the terms, after legal consultation if desired, (Contract 17, 140-2).  Dr. Leon suggests that it was a "contract of adhesion," but no legal consequences attach to that opprobrious epithet unless the contract is also unconscionable.  *Sanford v. Castleton Health Care Ctr., LLC*, 813 N.E.2d 411, 417 (Ind. Ct. App. 2004).  "Unconscionable" does not mean "one party enjoys advantages"—it means that the contract is so outrageous "no sensible man not under delusion, duress or in distress would make [it]."  *Id.*  The contract here is nowhere close to meeting that standard.

5

Dr. Leon argues that the contract interfered with *his* patients and *his* practice. (*See, e.g.*, Leon Aff. 14, ECF No. 146 (averring that IUHP's non-renewal "took my individual practice that I had built over twenty-five years").) But Dr. Leon gives no evidence, other than his subjective feeling of possession, that he actually had his own patients and his own practice. The contract refers to IUHP patients, not to Dr. Leon patients, (Contract 10, 12, 13, ECF No. 140-2.); in fact, it prohibits Dr. Leon from having a practice of his own, (*id.* at 2–3). And while the contract contains non-compete and non-solicitation provisions, those provisions do not apply when IUHP chooses not to renew—so, here, the patients were free to follow Dr. Leon to his new employment. (*Id.* at 12–23.)

Relatedly, Dr. Leon at times seems to argue that IUHP improperly controlled his patients' medical records. Here, too, the contract shows otherwise: Dr. Leon specifically assigns to IUHP control of patient (and other) records. (*Id.* at 7.) Likewise with billing. (*Id.* at 3, 10 (assigning to IUHP all billing, records, and fees).)

The same contractual foresight disposes of Dr. Leon's arguments about uncompensated administrative work. The contract provides that Dr. Leon's role includes "administrative" and "educational" services along with medical practice, (*id.* at 1), and those duties are recited again in Dr. Leon's "Duties," (*id.* at 2). The evidence shows Dr. Leon was eligible for, and received, "incentive" compensation for that work. (Surface-Bruder Aff. 2, ECF No. 139-2; *e.g.*, Income Statement 20, ECF No. 140-2.)

Then there are Dr. Leon's arguments about Indiana public policy. He seems to argue that all employment contracts between physicians and non-physicians are void

6

because such contracts interfere with doctor-patient relationships or constitute unauthorized practice of medicine by the employer. While it is clear to the Court that Dr. Leon takes the doctor-patient relationship seriously, Dr. Leon introduces no legal authority or independent evidence for his assertion that the doctor-patient "contracts" or "fiduciary relationships" supersede the written employment contract at issue here. (Pl.'s M. Summ. J. 10–12, ECF No. 134.) Indiana law contemplates employment contracts between hospitals or health care organizations and their physicians, Ind. Code § 25-22.5-1-2(c), and requires such contracts to allow for physicians' free exercise of medical judgment, as the contract here does, (Contract 4, ECF No. 140-2). Contracts like this are unremarkable to Indiana courts. *See, e.g.*, *Indiana Health Centers, Inc. v. Cardinal Health Sys., Inc.*, 774 N.E.2d 992, 1001 (Ind. Ct. App. 2002) (discussing issues in physician contract without mention of general validity). A private healthcare organization's personnel decisions are generally not under judicial control. *Kiracofe v. Reid Mem'l Hosp.*, 461 N.E.2d 1134, 1139 (Ind. Ct. App. 1984).

  C. Miscellaneous

The kitchen sink claims fare no better.

Dr. Leon does not explain how his "Agency Relationship" claim works, nor does he specify what sort of damages he would recover. (*Compare* Statement of Claims 60–62, ECF No. 111, *with* Pl.'s M. 6, ECF No. 134.)

7

Dr. Leon does not explain how the Indiana Wage Payment Statute helps him. (Claims 62, ECF No. 111.) He was paid at IUHP. He does not give any evidence of underpayment.

Dr. Leon claims "Fraudulent Misrepresentation" in the letter IUHP sent to patients "over his signature" explaining his departure from IUHP. (Claims 62, ECF No. 111.) But the letter, even if fraudulent, made no representations to him. *Zitzka v. Brogdon*, 222 N.E.3d 1025, 1028 (Ind. Ct. App. 2023). Dr. Leon suggests that unrelated fraudulent misrepresentations induced him to sign the 2012 contract. (Claims 63, ECF No. 111.) But he never—even now, long past the point at which he was obliged to do so, Fed. R. Civ. P. 9(b)—identifies what was said, by whom, or when. The contract itself disclaims any unwritten terms or agreements. (Contract 16, ECF No. 140-2). Dr. Leon cannot erect substantive contractual rights on the strength of his own unilateral and subjective belief.

Dr. Leon also claims but gives no evidence to show unjust enrichment. (Claims 63–66, ECF No. 111.) The existence of a contract forestalls the claim. *Bayh v. Sonnenburg*, 573 N.E.2d 398, 408 (Ind. 1991). And, in any case, Dr. Leon's subjective feeling he was underpaid is not enough to create a legal or equitable right.

Undermining his next claim, Dr. Leon does not show how IUHP interfered with his relationship with the IU School of Medicine. (Claims 66–68, ECF No. 111.) IUHP can only be liable for tortious inference if there was "a valid and enforceable contract," between Dr. Leon and the School, IUHP knew about it, IUHP induced the School to breach it, that inducement was without "justification" and damages resulted.

8

*Coleman v. Vukovich*, 825 N.E.2d 397, 403 (Ind. Ct. App. 2005). Dr. Leon does not give evidence tending to show that he had a contract with the School, that IUHP knew of it, or that IUHP induced a breach. To the contrary, it appears Dr. Leon's relationship with the School continues as before. (Leon Dep. 30–31, ECF No. 139-5.)

The "University Membership" claim, (Claims 68–69, ECF No. 111), appears to have been dropped. That is just as well, because the evidence shows that Dr. Leon's membership—a benefit in any case unrelated to IUHP—lapsed due to his own inaction. (Email 32, ECF No. 139-6.)

The "Interference with Patient Contracts" claims are discussed with the other contract claims above. (Claims 69–71, ECF No. 111.) As with the School of Medicine interference claims, discussed above, Dr. Leon would have to prove, *inter alia*, that he had contracts with the patients he treated, that IUHP knew of those contracts, and that IUHP induced the patients to breach them. *Coleman*, 825 N.E.2d at 403. Here again Dr. Leon gives no evidence of the "contractual agency" subsisting between him and each of his patients, and he does not show how IUHP interfered with such relationships if they existed.

The "Intentional Infliction of Emotional Distress" claim is not well taken. (Claims 71–72, ECF No. 111.) This is a bourgeois employment dispute, not a heinous crime. *Curry v. Whitaker*, 943 N.E.2d 354, 361 (Ind. Ct. App. 2011) (intentional infliction of emotional distress reserved for situations beyond all bounds of human decency).

Dr. Leon gives no evidence of an IUHP-School of Medicine contract for which he could be a third-party beneficiary. (Claims 72–73, ECF No. 111.)

9

Dr. Leon gives no evidence that IUHP took any of his property or otherwise committed a crime for which he is entitled to restitution. (Claims 73–75, ECF No. 111.) *See* Ind. Code § 35-43-4-3(a) (criminal conversion requires "unauthorized control over property of another person"); Ind. Code § 35-43-5-3(a) (old crime of "deception" repealed). The Court discussed above why Dr. Leon's subjective feelings of control over his medical practice do not give him actual ownership of that practice or its accessories. Because there is no "Dr. Leon Practice," there is no possibility of conversion (or deception, were that statute still in effect), even assuming IUHP's acts were "unauthorized."

Dr. Leon introduces no evidence, even now, of defamatory statements. (Claims 75–77, ECF No. 111.) *Hall v. Shaw*, 147 N.E.3d 394, 407 (Ind. Ct. App. 2020) (alleged defamatory statements must be identified at the pleading stage); *Miller v. Cent. Indiana Cmty. Found., Inc.*, 11 N.E.3d 944, 956 (Ind. Ct. App. 2014) (alleged defamatory statement must be demonstrably false at summary judgment).

Dr. Leon appears to have dropped his "Invasion of Right of Privacy" claim. (Claims 77, ECF No. 111.)

Dr. Leon's general-purpose "Intimidation, Harassment, and Retaliatory Discharge" claim is unmoored from any legal right to recovery. (Claims 77–78, ECF No. 111.) Dr. Leon does not identify any common-law or statutory entitlement that applies. And while Dr. Leon is convinced IUHP treated him unfairly, this Court is not a general forum for the airing of employment grievances. *O'Regan v. Arb. Fs.,*

*Inc.*, 246 F.3d 975, 984 (7th Cir. 2001).  Unfairness at work is not something the Court can remedy unless and until it violates a specific legal right.

There is no personal injury or other tort to Dr. Leon to support a loss of consortium claim for his wife.  (Claims 78–79, ECF No. 111); *Durham ex rel. Est. of Wade v. U-Haul Int'l*, 745 N.E.2d 755, 764 (Ind. 2001).

The Constitution protects citizens from the government, not each other, so Dr. Leon's undeveloped references to 42 U.S.C. § 1983 and the U.S. Constitution, including Fourteenth Amendment due process and First Amendment free speech rights, could not succeed even had the claims been better developed.  (Claims 79, ECF No. 111); *L.P. v. Marian Cath. High Sch.*, 852 F.3d 690, 696 (7th Cir. 2017); *Babchuk v. Indiana Univ. Health, Inc.*, 809 F.3d 966, 971 (7th Cir. 2016) (holding related organization IU Health is not a state actor at least in regard to employment disputes).

Dr. Leon's "Restraint of Trade" claim is undeveloped, and, in any case, unsupported by evidence.  (Claims 79–80, ECF No. 111.)  *M.G. Skinner & Assocs. Ins. Agency v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority.").  The Court is not sure what legal theory, if any, is implicated by Dr. Leon's criticism of IUHP's "agglomeration of physician providers," but, to the extent that it challenges the contract's non-compete clause, the Court notes again that that clause did not apply to Dr. Leon on these facts.  (The Court has no occasion to consider whether the clause would have been enforceable under recent changes to Indiana law.  *See* Ind. Code § 25-22.5-5.5-2.5 (2020, 2023).)

Finally, Dr. Leon's ADEA claim, (Claims 80–81, ECF No. 111), on which federal jurisdiction was initially premised, has sunk without a trace. (This Court retains supplemental jurisdiction over the state-law claims because it is useless—especially when discovery is complete and the case ripe for full resolution on summary judgment—to remand "doomed" litigation to state court. *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 502 (7th Cir. 1999).) In pertinent part, the ADEA protects employees who are at least forty years old from being discharged because of their age. 29 U.S.C. § 623(a)(1); 29 U.S.C. § 631(a). "A plaintiff suing under the ADEA 'must prove, by a preponderance of the evidence, that age was the "but-for" cause of the challenged adverse employment action.'" *Sinha v. Bradley Univ.*, 995 F.3d 568, 574 (7th Cir. 2021) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009)). The ultimate question, after the Court evaluates all evidence together as a whole, is whether the non-moving party has produced sufficient evidence to support a jury verdict of intentional discrimination. *Marnocha v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 986 F.3d 711, 718 (7th Cir. 2021); *David v. Bd. of Trustees of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017). Dr. Leon has not met that standard. Indeed, there is no evidence to support age discrimination here—the well-documented conflict between Dr. Leon and IUHP is about leadership style; there is no hint of lurking pretext.

### III. Conclusion

Dr. Leon failed to rebut IUHP's patient and painstaking cross motion. Thus, IUHP is entitled, on procedural grounds, to summary judgment in its favor. That

12

outcome is only reinforced by the evidence, which shows that IUHP also wins on the merits.

Dr. Leon's Motion for Summary Judgment, (ECF No. 134), is **denied**, and IUHP's Cross Motion for Summary Judgment, (ECF No. 138), is **granted** on all claims. The case is over, and final judgment shall issue accordingly.

Of the four other pending motions, the Motion to Strike Jury Demand, (ECF No. 164), and the Motion for Extension of Time, (ECF No. 169), are **denied as moot**. But the two pending Motions to Maintain Under Seal, (ECF Nos. 142, 148), are about public access to the docket. That still matters even though the substantive case has here been decided, and so those motions shall **remain live** before the Magistrate Judge.

**SO ORDERED.**

Date: 02/26/2024

_JAMES R. SWEENEY II, JUDGE_
United States District Court
Southern District of Indiana

Distribution:

Molly Broadhead
HOOVER HULL TURNER LLP
mbroadhead@hooverhullturner.com

Katherine Lee English
HOOVER HULL TURNER LLP
kenglish@hooverhullturner.com

13

Riley H. Floyd
HOOVER HULL TURNER LLP
rfloyd@hooverhullturner.com

Laurie E. Martin
HOOVER HULL TURNER LLP
lmartin@hooverhullturner.com

George W. Pendygraft
George W. Pendygraft, P.C.
ecolawyer@aol.com

14